COUNTY COURT OF SUMMERS COUNTY *v.* MARGARET NICELY, *et al.*

(No. 8989)

Submitted November 7, 1939. Decided December 16, 1939.

*Simms & Simms,* for plaintiff in error.

*P. J. Carr, W. A. Brown* and *Percy H. Brown,* for defendants in error.

Fox, President:

This is a statutory proceeding instituted under the provisions of Code, 6-6-7, by the county court of Summers County, seeking to remove from office Margaret Nicely, county superintendent, and the members of the Board of Education of said county. Margaret Nicely filed her separate demurrer to the petition, basing the same upon the claim that she does not hold a county office, and therefore does not come within the provisions of the statute under which the proceeding is instituted. This demurrer was sustained by the trial court, to which action the county court prosecutes this writ of error.

The pertinent provisions of Code, 6-6-7, are as follows:

> "Any person holding any county, magisterial district, independent school district, or municipal office, including the office of a member of a board of education, the term or tenure of which office is fixed by law, whether elected or appointed thereto, except a judge of a court of record, may be removed by the circuit court of the county wherein such officer or person resides, * * *."

Then follow provisions as to the manner in which charges shall be filed to effect such removal, the hearing thereon, with right of appeal to this court, and the section ends with this further provision:

> "The method herein provided for the removal of any officer shall be in addition to any other methods provided by law. * * *"

The decisive question is whether, under existing law, a county superintendent holds a county office, and as such comes within the provisions of the statute quoted above. If not such office, then it is unnecessary to inquire into the effect of the provision that the method of removal under Code, 6-6-7, shall be in addition to any other methods provided by law.

We are of the opinion that prior to the enactment of what is known as the County Unit Law, Chapter 8, Acts Legislature, First Extra. Sess., 1933, there was a county

office defined as county superintendent of schools. Code 1931, 18-4-1. The duties of such office were broad and sweeping, and included powers of independent judgment and discretion. The holder thereof was elected for a fixed term of four years and was required to be a resident of the county in which he was elected. His duties were independent of any control on the part of any district board of education, and he was subject to removal by the State Board of Education. He was *ex officio* financial secretary of school affairs; was required and empowered to countersign all orders drawn on any school fund; was designated as the chief executive school officer of the county; and was in general charge of school affairs. In our judgment, he came within the definition of a public officer in that he was authorized to exercise some of the sovereign powers of the state. While there may be authorities from other jurisdictions which throw doubt upon this statement, we think it settled that, historically and actually, a county superintendent of schools was, under Code 1931, 18-4-1, a county officer, and therefore came within the provisions of the statute under which this proceeding was instituted.

The County Unit Law made wide and comprehensive changes in our school system. All magisterial and independent school districts, and the boards of education therefor, were abolished, and the county was set up as the school unit and as one school district. A Board of Education, elected from the county at large, was substituted, and that board was given full and complete powers of control over the schools of the county. As the law was originally enacted, it was provided that the county superintendent should be elected by the board of education, but his tenure was not fixed. It was provided that the board might, in its judgment and discretion, remove the superintendent for cause. Certain duties were assigned to the superintendent, most of which are purely ministerial, and, where they involve discretion, are generally required to be done subject to the approval of the board. By an amendment to this act, Chapter 34, Acts

Legislature, Regular Session 1937, it was provided that the county superintendent should be elected by the county board of education for a term of not more than four years, and the grounds upon which the board might remove a superintendent of schools were defined as "immorality, incompetency, insubordination, intemperance or wilful neglect of duty."

We cannot escape the conclusion that, whatever may have been the status of the county superintendent of schools under the old system, the present county superintendent is not a county officer within the meaning of the statute under which this proceeding was instituted. We regard him as the executive agent of the board of education, and the fact that the statute requires him to act as the chief executive officer of the board (Code, 18-4-10) does not make him a county officer in fact. The mere use of the word "officer", or the provisions that the superintendent shall be provided with a suitable office and be entitled to clerical assistants, do not, of themselves, make him the holder of a county office. The real test, we think, is defined in *Hartigan* v. *Board of Regents,* 49 W. Va. 14, 38 S. E. 698, in which Judge Brannon cited with approval many authorities to the effect that the true test of whether or not one occupied a public office is whether he should, under such office, be required to exercise what may be called a part of the sovereignty of the state. We approve and adopt this test, and we say that whatever part of the sovereignty of the state is delegated to any official or officials, in connection with our county educational systems, is vested in the boards of education of the several counties. The county superintendents are appointed by such boards, are subject to their control, may be removed by them for various reasons set out in the statute, including insubordination, and do not, in our opinion, occupy the positions of county officers.

It is suggested by counsel for the defendant in error that the county superintendent comes under the definition of a teacher, and that the decisions of this court, to the effect that a teacher in the free schools of this state is

not a public officer, apply. *Heath* v. *Johnson,* 36 W. Va. 782, 15 S. E. 980. We do not think this position is tenable. The act by which the office of county superintendent is created has in it certain definitions, and in article 1, section 1, sub-section (c) the word "teacher" is defined to mean "teacher, supervisor, principal, superintendent, public school librarian or any other person regularly employed for instructional purposes in a public school in this state." And in sub-section (g) of the same section, it is stated " 'Superintendent' shall mean the county superintendent of schools." It appears clearly, therefore, that the county superintendent cannot be classified as a teacher.

Much authority has been cited from other jurisdictions, and it must be admitted that some of the cases cited are strongly persuasive in favor of the plaintiff in error. We think, however, that this case is one which should be decided on general principles and under our own statutes and decisions. As we view the case, the fundamental change in our educational system has removed from the county superintendent of schools, as he was designated under the old law, all the elements of power arising out of sovereignty which, under that law, were delegated to him, and he has been, by such change, removed from that class of officials who are permitted to exercise a part of the sovereign power of the state.

The case of *Springer* v. *Board,* 117 W. Va. 413, 185 S. E. 692, is cited by plaintiff in error as recognizing that the county superintendent is a public officer. In that case, the relator was elected to said office at the general election held in 1930, and, if we are correct in the assumption that at the time of his qualification he became a county officer, he was, under general law, entitled to continue as such until the expiration of his term, and recognition of him as a public officer was entirely warranted, if the decision did so recognize him. But the important question decided in that case concerned the claim for additional compensation on account of increased duties. We do not think the case throws any light upon the decisive question presented on this record.

It will be noted that the county superintendent, under the present statute, is not required to be a citizen of this state, or a resident of the county in which he is appointed to serve, while, under Code 1931, 18-4-1, he was required to be a resident of the county in which he was elected. It is said that the fact that residence is not made a qualification indicates that the legislature did not intend to make of the county superintendent a county officer, because without a requirement of citizenship there would have been a violation of the constitutional provision, Article IV, Section 4, Constitution, that "No person, except citizens entitled to vote, shall be elected or appointed to any state, county or municipal office * * *." On the other hand, the plaintiff in error contends that the absence of residential qualification need not affect the status of the office in any way, but merely goes to the question of the qualification of the holder thereof. There is merit in both contentions. If, in fact, a county office is created, then, under the constitution, it cannot be held by one who is a nonresident of the state, or lacking the qualifications of a voter, even if he were appointed or elected under an act which did not require him to be a resident of the state and entitled to vote therein; while, on the other hand, the fact that the legislature—presumed to be familiar with the constitutional provision—omitted the requirement of residence in this state as a qualification, strongly argues that the position of county superintendent was not intended to be a county office. A decision of this particular question is not decisive of this case, and the same need not be further elaborated.

On the whole, we are of the opinion that the trial court did not err in sustaining the demurrer of Margaret Nicely, and its action in so doing is affirmed.

*Affirmed.*