JOHN H. JACKSON *etc.*

*v.*

BOARD OF EDUCATION OF KANAWHA COUNTY *et al.*

(CC 705)

Submitted October 3, 1945.   Decided November 13, 1945.

*Cullen G. Hall,* for plaintiff.
*Preston & Davis,* for defendant.

KENNA, JUDGE:

This chancery proceeding was instituted in the Circuit Court of Kanawha County by John H. Jackson, a resident taxpayer, against the Board of Education of that County, Charles P. McCabe, President of the Board, and Virgil L. Flinn, Superintendent of Schools of Kanawha County and in his individual right, for the purpose of enjoining the Board of Education from paying to Virgil L. Flinn as County Superintendent of Schools the sum of $7,500 as salary for the school year 1945-46 pursuant to the action of the Board at its regular meeting on July 2, 1945. The defendants appeared and filed their joint and several answers, to which the plaintiff demurred and upon overruling the demurrer the Circuit Judge upon the joint application of the parties certified to this Court the following questions:

> "1. Whether a county superintendent of schools is a public officer in contemplation and within the purview and application of the inhibition of Section 38, Article VI of the Constitution of West Virginia, which provides that "nor shall the salary of any public officer be

increased or diminished during his term of office * * *".

"2. Whether a county board of education may annually determine and fix, within the limits prescribed by law, the annual salary the superintendent of schools is to receive in the several separate years of the term of office for which it elected him.

"3. Whether The Board of Education of Kanawha County when it elected defendant Virgil L. Flinn Superintendent of Schools of that County in fact fixed the salary that he was to receive in each year of his term at the maximum amount permissible under the law for and during each of the separate years thereof.

"4. Whether the action of The Board of Education of Kanawha County taken by its resolution of July 2, 1945 in fixing the salary of the defendant, Virgil L. Flinn, for the current fiscal year then commencing at $7500.00, was legal and effectual as to the amount of that part thereof which exceeds $5000.00

"5. Whether or not the constitutional provision above mentioned in "1" applies under the facts and circumstances as set forth in the admitted allegations of the Bill and Answer in this case so as to limit his legal salary to an amount less than that permissible under the provisions of Enrolled House Bill No. 155 enacted by the 1945 Session of the Legislature."

There are no material issues of fact arising from the bill of complaint and the answers, so that in stating what we regard as the allegations upon which the necessary answers of the certified questions depend, they will not be distinguished.

On July 3, 1944, Virgil L. Flinn was elected County Superintendent of Schools by the Kanawha County Board of Education for a term of four years as authorized by Code, 18-4-1, and in the resolution evidencing his election the Board agreed to pay him "the maximum salary allowed by law", naming no amount. At that time

Kanawha County was receiving the maximum amount of state aid, which was and is $2,000 per annum, to apply on the salary of the County Superintendent. The maximum amount that the Board of Education could pay from the county school fund was $3,000. Code, 18-4-4. Since these two means were the only sources from which money was available to fix the then maximum allowed by law, Flinn's salary was $5,000 per annum at the beginning of his four-year term as County Superintendent. On July 1, 1945, Enrolled House Bill No. 155 became effective and by its terms the maximum amount that Boards of Education were authorized to pay from the county school fund to County Superintendents as salary in counties with a population of one-hundred thousand or over was raised from $3,000 to $5,500. On July 2, 1945, the Board of Education unanimously adopted a resolution fixing the salary of Flinn for the current year at $7,500, being the maximum permitted from the combined available funds. This resolution named the amount, which the former resolution had not.

The main question before us on this certification is whether the action of the Board of Education in fixing the salary of the County Superintendent of Schools for the second year of his four-year term at $7,500, as compared with the salary of $5,000 that he received for the first year of his four-year term, is violative of Section 38, Article 6 of our Constitution, which reads in part as follows: "* * * Nor shall the salary of any public officer be increased or diminished during his term of office, * * *". This question can be subdivided so that we believe the five questions propounded can be disposed of for the purposes of this certification by answering only two queries: First, is the position of County Superintendent of Schools a public office so that the occupant is a public officer, and second, if so, did the resolution of the Board of Education adopted July 2, 1945, increase the salary of the County Superintendent within the meaning of Section 38 of Article 6 of our Constitution?

We are of the opinion that the first question has been settled by *Rowan* v. *Board*, 125 W. Va. 406, 24 S. E. 2d 583, and *Rodgers* v. *Board*, 125 W. Va. 579, 25 S. E. 2d 537. Public education is a governmental function and all executive participants in its furtherance are in part clothed with the sovereign power of the State and therefore public officers. In the *Rowan* case we had this to say: "In *County Court* v. *Nicely*, 121 W. Va. 767, 6 S. E. 2d 485, we held that a county superintendent of schools .was not a county officer, and removable as such by the circuit court under the provisions of Code, 6-6-7. That was the sole question decided in that case. The suggestion is made that, not being a county officer, the doctrine relating to *de facto* officers does not apply to the relator, Lon E. Browning. To this we reply that, under the statute now in force, Acts 1941, Chapter 33, he is armed with governmental power, namely, to nominate teachers and principals, and to assign, transfer, suspend, promote or dismiss teachers and other school employees. This makes him a public officer to whom we can apply the doctrine relating to *de facto* officials." In the *Rodgers* case we repeated that conclusion, stating in the first syllabus point:

> "A county superintendent of schools elected pursuant to Acts of Legislature, 1937, Chapter 34, Article 4, Section 1, is an officer of the county school district, and not a mere employee of the board of education by which he was elected."

We are urged by the defendant in error to restrict the rule established by the two cases just quoted to the exact questions before the Court therein, so that in the *Rowan* case the holding would be confined to the rule regarding a *de facto* officer and in the *Rodgers* case to the principle that mandamus lies to restore to office a person who has been wrongfully ousted from a county superintendency, and to apply a different rule concerning county superintendents under the applicable constitutional provision governing salaries of public officers. In this connection the argument is advanced that if coun-

ty superintendents are held to be public officers for all purposes they fall within the provision of Section 4, Article 4 of our Constitution requiring all state, county and municipal offices to be filled by citizens entitled to vote, whereas Code, 18-4-2, does not prescribe the same qualifications for a county superintendent of schools. To this we say only that if the Legislature in prescribing the qualifications of county superintendents omitted the requirements of our Constitution, nevertheless the constitutional provision must be complied with. However, that question is not now before us except by way of argument and we do not wish to be understood as undertaking now to settle it directly other than it has been settled in the *Rowan* and *Rodgers* cases. We see no reason to distinguish the principle we are now discussing from that involved in those cases.

Concerning the second point, there can be no doubt that Flinn on July 3, 1944, was elected by the Board of Education for a term of four years, even though the Board did not directly nor expressly settle his salary at a specific amount but attempted to leave it so that the Legislature by general statute without considering Flinn's fitness might either substantially raise or lower his pay. The language that the Board used in its resolution attempted to say that Flinn would receive the benefit or detriment of any general statutory provision which increased or lowered the available amount that could be paid to county superintendents of schools, so that the Legislature itself would be indirectly and by necessary implication controlling his salary subject to change during his term of office. That can not be done by any public authority under our Constitution, including the Legislature. In this particular case we reach that conclusion with reluctance because it is a matter of public concern and the ability and devotion to duty of Mr. Flinn are of common knowledge. However, the question is one of public policy over which this Court has no control.

Being of the opinion that the questions certified have

been answered by the foregoing discussion to the extent that is necessary, the finding of the Circuit Court is reversed and the cause remanded with directions to sustain the demurrer to the answer and to hold that the Board of Education of Kanawha County by the resolution it adopted on July 3, 1944, elected Virgil L. Flinn County Superintendent of Schools for the term of four years from that date at the maximum salary at that time allowed by law which was $5,000 per annum and that the amount so fixed can not under Section 38, Article 6 of the Constitution of the State of West Virginia be increased or diminished in amount during the term of four years for which Mr. Flinn was elected by the Board of Education.

*Reversed.*