L. O. Schwartz, M. D., County
Health Officer of Hancock County

*v.*

The County Court of Hancock
County, West Virginia

(No. 10416)

Submitted October 30, 1951.   Decided December 11, 1951.

*Abraham Pinsky, Walter. E. Mahan,* for relator.

*William Callahan,* Prosecuting Attorney, *Samuel Schafer,* Assistant Prosecuting Attorney, for respondent.

Given, Judge:

This original proceeding in mandamus involves the right of the County Court of Hancock County to remove from office the county health officer of that county. The petitioner, Doctor L. O. Schwartz, the county health officer involved, prays that a peremptory writ be awarded him commanding defendant, the County Court of Hancock County, to rescind its action attempting to remove him from office and to require defendant to pay unto him his monthly salary of $325.00 for July and August, 1951. Defendant filed its demurrer and answer to the petition

filed by Doctor Schwartz, and petitioner filed his demurrer and special reply to the answer. Depositions were taken on behalf of petitioner and defendant, and are now before this Court.

Petitioner was appointed "acting Health Officer" for Hancock County for a term of four years from July 1, 1945, upon nomination made by the county court, and duly entered upon the duties of that office and served the full term. By letter of May 27, 1949, the county court was advised by the State Board of Health that the term of Doctor Schwartz as health officer of Hancock County would expire on June 30, 1949, and enclosed with the letter two blank forms to be used by the county court in submitting a nomination for that office for the ensuing term. The matter of the nomination was before the county court at its session held on the seventh day of June, 1949, and the "minutes" of that session show that "Dr. L. O. Schwartz was recommended to the Health Department as County Health Doctor for the coming fiscal year." One of the blank forms enclosed with the letter of May 27 was used in making the nomination, which bears date June 7, 1949, and reads as follows:

"TO THE WEST VIRGINIA BOARD OF HEALTH

CAPITOL BUILDING
CHARLESTON 5, WEST VIRGINIA

"The County Court of Hancock County hereby nominates Dr. L. O. Schwartz, of Weirton, W. Va. as Health Officer of the County for the term beginning July 1, 1949, and ending June 30, 1953, at a salary of $3900.00 per annum, in accordance with Chapter 16, Article 2, Section 1 of the Official Code of West Virginia.

"The County Court requests confirmation of this appointment by the West Virginia Board of Health.

"(Signed)     *T. J. Garlick*

"(Title)     *Pres. Hancock County Court*"

At the time the nomination was considered by the county court, the court was composed of T. J. Garlick, President, and William C. Graham and James F. Hill, Commissioners.

By letter of June 21, 1949, the State Board of Health acknowledged receipt of the nomination and advised that it would receive consideration at the meeting of the state board to be held July 1. By letter of July 11, 1949, the county court was advised of the appointment of Doctor Schwartz, which letter reads as follows:

"Honorable T. J. Garlick
President, Hancock County Court
New Cumberland, West Virginia

"Dear Mr. Garlick:

"I am pleased to advise you that the State Board of Health, during their meeting on July 1, 1949, confirmed the appointment of Doctor L. O. Schwartz as parttime Health Officer of Hancock County for the term beginning July 1, 1949, and ending June 30, 1953.

"A certificate of appointment will be sent directly to Doctor Schwartz within the next few days.

"With best wishes, I am

"Sincerely yours
"N. H. Dyer, M.D., Secretary
"West Virginia Board of Health"

A certificate of the appointment was forwarded to Doctor Schwartz by the State Board of Health, which reads:

"(Seal of West Virginia)

"WEST VIRGINIA BOARD OF HEALTH

"This certifies that L. O. Schwartz, M.D. of the County of Hancock having been nominated by the County Court of Hancock County, is hereby appointed Health Officer of said county for a term of four years from July 1st, 1949.

"Given under my hand and the seal of the West Virginia Board of Health this first day of July 1949.

"By order of the Board
"N. H. Dyer, M.D. (signed)
"Secretary and Executive Officer."

Doctor Schwartz continued to perform his duties as county health officer for the fiscal years 1949-1950 and 1950-1951, and was paid by the county court for his services an annual salary of $3,900.00, and travel expenses of $50.00 per month for the fiscal year ending June 30, 1950; and an annual salary of $4,200.00, and travel expenses of $50.00 per month, for the fiscal year ending June 30, 1951. Apparently no matter involving the appointment of a health officer was considered by the county court after the nomination of Doctor Schwartz on June 7, 1949, until the thirtieth day of June, 1951, when the minutes of the county court of that date show the following: "After due discussion, on motion of Commissioner Mitchell, seconded by Commissioner Hill and passed unanimously, Doctor L. O. Schwartz was removed as acting Health Doctor and Coroner for Hancock County, West Virginia, as of this date." Later in the day a certified copy of these minutes of the county court was served upon Doctor Schwartz. He had no previous notice of any proposed action by the county court relating to his removal, and no charges were filed against him. At the time of the attempted removal the members of the county court were William C. Graham, James F. Hill and Charles Mitchell.

The minutes of the county court disclose that on July 11, 1951, the following action was taken: "On motion duly made, seconded and passed unanimously, the salary of Dr. L. O. Schwartz as County Health Dr. for Hancock County Ct. was reduced to $300.00 per year". Doctor Schwartz was notified of the action of the county court, and also notified that he would be paid no compensation for any services rendered as county health officer after June 30, 1951, and he has received no compensation for

such services since that date, notwithstanding demand therefor was made by him. Also, on August 30, 1951, the county court attempted to "appoint" Doctor James E. Fisher as county health officer for a term beginning September 1, 1951, and ending June 30, 1952, at an annual salary of $3,900.00, and travel expenses of $50.00 per month.

The county court contends that the appointment of Doctor Schwartz, made by the State Board of Health on July 1, 1949, was for a one year term only, since the minutes of that court disclose that the nomination was "for the coming fiscal year". It contends further that the instrument of June 7, 1949, nominating Doctor Schwartz for a "term beginning July 1, 1949, and ending June 30, 1953, at a salary of $3,900.00 per annum" was signed by T. J. Garlick, as president of the county court, without proper authority. The county court admits, however, that Doctor Schwartz "was a legally qualified and appointed Health Officer for the County of Hancock, for one year, the fiscal year beginning July 1, 1949, and ending on midnight of June 30, 1950".

The contentions of petitioner are that the nomination was duly authorized by the county court; that whether the nomination was intended to be for a one year term or a four year term is immaterial, for the reason that an appointment by the State Board of Health for a four year term only is authorized by the applicable statutes; that the office of county health officer is a public office; that the county court possessed no power to remove petitioner therefrom in the absence of the filing of charges and without affording him an opportunity to defend; and that his salary could not be reduced during the term for which he was appointed.

Don G. Stewart, Clerk of the County Court of Hancock County since January 1, 1933, testified to the effect that the letter of May 27, 1949, and the blank forms enclosed therewith, were received by the county court, and that the letter "was submitted to the county court at its regular session on June 7, 1949"; that the enclosed forms

were executed nominating Doctor Schwartz as county health officer, and one of the executed forms was forwarded by him, upon instructions of the county court, to the State Board of Health, and that the other executed form was placed on file in the county court clerk's office; that the letter of June 7, nominating Doctor Schwartz, was "signed at the meeting of June 7 * * * and was signed here at the desk. I would say the other commissioners were present at the time"; and that "in writing these minutes in the record book that perhaps I was in error in using the words 'for the coming fiscal year' ". It further appears that the minutes were read at the following session of the county court and that no objection was made to the words "for the coming fiscal year", and that the minutes of the two meetings were not signed by any of the commissioners.

T. J. Garlick, president of the county court at the time of the nomination of Doctor Schwartz, testified to the effect that his action in signing the letter of June 7, 1949, nominating Doctor Schwartz for the four year term beginning July 1, 1949, was the action of the county court; that Doctor Schwartz was appointed for a four year term; that the letter of nomination was signed at a session of the county court, and that he remembered no discussion as to the appointment being for the "coming fiscal year". When asked: "And did the County Court, through you as president, make the recommendation for a four year term in June of 1949", he answered: "Sure."

Doctor Schwartz testified to the effect that he was appointed as "acting Health Officer" for a four year term from July 1, 1945; that he served as such officer during that term; that he received from the State Board of Health a certificate dated July 1, 1949, appointing him county health officer of Hancock County for a term of four years beginning July 1, 1949; that he entered upon his duties as such officer and received a salary of $3,900.00 for the fiscal year beginning July 1, 1949; that he did not know what salary he was paid for the fiscal year beginning July 1, 1950; that he received, in addition to his sal-

ary, $50.00 monthly for traveling expenses; and that he had been refused payment for any services rendered or expenses as such officer after July 1, 1951.

William C. Graham, one of the commissioners of the county court, testified to the effect that he could not "remember anything about a four year term"; that the minutes showed that Doctor Schwartz "was appointed for the fiscal year 1949"; that T. J. Garlick was not instructed to execute and forward the letter nominating Doctor Schwartz to the four year term beginning July 1, 1949; and that Doctor Schwartz appeared at sessions of the county court in 1950, and also in 1951, and made inquiries as to "how he stood" for the following fiscal years. When asked whether the contents of the letter of June 7, 1949, nominating Doctor Schwartz, were discussed at the session of the court of that date, he answered: "Not as I recall."

James F. Hill, another commissioner of the county court, testified to the effect that he did not "recall" any formal action being taken by the county court with reference to the appointment of Doctor Schwartz for a four year term; that there was no objection to the appointment for a one year term; that he never saw the letter of June 7, 1949, nominating Doctor Schwartz for a four year term, and that he understood the appointment to be for only one year. When asked if it were possible that the blank form enclosed with the letter of May 27, 1949, was handed to him and that he did not "look at it very well", he answered: "It could have been. I don't think so." He was asked, concerning the letter of June 7, 1949, the following question: "Could it have been signed without your remembering it now?"; and he answered: "I wouldn't say it could and I wouldn't say it couldn't have been."

These and other witnesses testified to certain other facts tending to support the respective contentions of the parties. We think, however, the testimony detailed necessarily controls the findings of the Court as to any substantial question of fact. In view of the final conclusions

reached by the Court, such findings may be of little significance. Nevertheless, we indicate the view that the letter of June 7, 1949, written on the blank form enclosed with the letter of the twenty-seventh of the previous month, nominating petitioner as county health officer for Hancock County for a term of four years commencing July 1, 1949, and ending June 30, 1953, at a salary of $3,-900.00 per annum, was executed by T. J. Garlick, then president of the county court, under authority of the court. To us it appears that there is little, if any, real conflict in the testimony as to the controlling facts. Witnesses for petitioner testify positively that the letter was presented to the county court at its regular session and then acted upon, while witnesses for defendant in the matter simply do not remember any such action being taken by the county court. As will later appear, the fact that the minutes indicated that the nomination of Doctor Schwartz, at the meeting of June 7, 1949, was for the coming fiscal year, and not for the four year term, is of no significance. Neither is it material that Doctor Schwartz and some members of the county court may have later believed that the appointment was made for the one year term.

This Court must decide whether a county health officer, appointed pursuant to the provisions of the statute, hereinafter quoted, is a public officer within the meaning of Section 38, Article VI of the State Constitution; whether such officer may be nominated or appointed for a term other than four years; if a public officer within the meaning of the constitutional provision, whether he may be removed from office without having been accorded an opportunity to be heard or to defend; and whether the salary of such officer may be reduced during the term for which he was appointed.

Chapter 16 of the Code deals with matters of public health. Article 1 thereof establishes a state board of health, sometimes designated by the chapter as state public health council, makes it a corporation, and defines its powers and duties. The powers and duties so fixed are

very broad. They relate to matters affecting the health of the inhabitants of the State, and to the enforcement of laws relating to public health. The executive officer of the state board is the State Director of Health, who is elected by the nine members of the state board, for an indefinite term.

Article 2 of Chapter 16 deals with county and municipal health officers. Applicable parts of Section 1 of Article 2 read:

"It shall be the duty of the state public health council, upon the recommendation of the county court of the county, to appoint in each county of this State a legally qualified physician, who shall be known as the county health officer. * * *. Beginning on the first day of July, nineteen hundred and thirty-three, and on the first day of July of each fourth year thereafter, a county health officer shall be appointed as aforesaid to serve for a term of four years, unless sooner removed by the said county court or by the public health council. Beginning on the first day of July, nineteen hundred and thirty-one, and on the first day of July of each alternate year thereafter, a municipal health officer shall be appointed as aforesaid to serve for a term of two years, unless sooner removed by the said municipality or by the public health council. Should the public health council fail to confirm the nomination of the person recommended as county or municipal health officer, or should the public health council or the county or municipal authority remove any such officer, another nomination shall at once be made to the public health council by the nominating authority.

"The county health officer shall receive an official salary of not less than three hundred dollars per annum, and such other amount as the county court may add for additional services, and actual necessary traveling expenses, unless for work specially done under orders of the state department of health. The salary of the county health officer shall be paid out of the treasury of the county. It shall be the duty of every practicing physician to report to the municipal health officer, where there is such of-

ficial, immediately on diagnosis, every case of communicable or infectious disease that may arise or come under his treatment within the municipality, and to the county health officer cases occurring outside of the municipality, and also, where there is no municipal health officer, cases occurring within such municipality. The health officer receiving such reports shall make to the state health department a weekly report of all such cases, stating the number of each kind of disease reported, the action taken to arrest the infection, and the result.

"The county health officer together with the president of the county court and the prosecuting attorney shall constitute the county board of health, of which the county health officer shall be the executive officer. The county board of health shall exercise all the powers, and enforce all the rules and regulations of the state public health council, so far as applicable to such county. In a county which has a full-time county health officer, the jurisdiction of the county board of health and of the county health officer shall be coextensive with the county, and shall include every city, town and village therein which does not have a full-time health officer of its own, but shall not include any city, town or village therein which has such full-time health officer. But in a county which has a part-time health officer only, the jurisdiction of the county board of health and of such part-time health officer shall not extend to any city, town or village therein having a full-time or part-time health officer of its own. All county and municipal boards of health and health officers shall be secondary to the state public health council, and subject to all orders of such public health council, which may, if deemed expedient, act through the county and municipal boards. * * *".

Section 3 of Article 2, as amended, reads:

"Any two or more counties, or any county or counties and any one or more municipalities within the said county or counties, may combine to cooperate with the state department of health, by vote of the county court in the case of a county and by vote of the council or other gov-

erning body in the case of a municipality, and may participate in the employment of trained health officers and other agents or in the installation and maintenance of a common laboratory and other equipment. Whenever any such units shall decide so to cooperate and shall appropriate a sum or sums of money for such joint or cooperative action, a sum equal to two-fifths of the total amount contributed by the cooperating units, shall be added thereto from the appropriation made for the state department of health: Provided, that the general plan of cooperation, as well as the principal health officer, executive agent or laboratory director employed by the cooperating units, shall first have been approved by the state board of health.

"Each county or municipality participating in any such cooperative action shall annually select and appoint by vote of the county court in the case of a county, and by vote of the council or other governing body in the case of a municipality, not less than one nor more than three persons to be members of a combined board of health. No such person shall be selected by, nor represent on any such combined board, more than one such county or municipality. The number of persons to be selected by each participating county or municipality as members of such board, subject to the limitation contained in the two preceding sentences, shall be agreed upon by the several counties or municipalities participating. Any such combined board of health shall consist of the several members so selected. Such board shall organize by electing a chairman from among its members. It shall have the power to adopt, and from time to time amend, such rules and regulations as it may deem necessary concerning the time and place of its meetings, the procedure and method of conducting its meetings or business, and any other matters affecting, or necessary to, the orderly and efficient discharge of its duties or exercise of its powers. All powers and duties belonging to or vested in county boards of health or municipal boards of health are hereby vested in, conferred upon, and declared to be, the powers and duties of, any combined board of health created pursuant to the

provisions of this section. The territorial jurisdiction of any such combined board of health shall be coextensive with the boundaries of all of the counties and municipalities which have been combined to cooperate as herein provided.

"Upon the formation of a combined local board of health as herein provided, and during the period that it continues to exist, there shall be no separate county board of health or municipal board of health in any county or municipality represented on the combined board of health."

In the opinion in *Hartigan* v. *Board of Regents,* 49 W. Va. 14, 38 S. E. 698, Judge Brannon used this language: "* * * What is a public office? The word is used in so many senses that it is impossible to give a precise definition covering all cases. It depends, not on what we call it, or even on what a statute may incidentally call it, but upon the powers wielded, the functions performed, and other circumstances manifesting the character of the position. *State* v. *Kennon,* 7 Ohio St. 546. Mechem on Office and Officers, s. 4, says: 'The most important characteristic which distinguishes an office from an employment or contract is, that the creation or conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer.' It at once struck me in reading the wilderness of law upon the simple but difficult question, what is a public office? that the requirement to make one a public officer he should exercise something that can fitly be called a part of the sovereignty of the State, was a test. This test is approved as an important or chief one in *State* v. *Jennings,* 57 Ohio St. 415, 63 Am. St. R. 723. It is stated to be the true test in *Eliason* v. *Coleman,* 86 N. C. 235. It has been often approved as a strong index. High, Extra L. Rem. s. 625; *Doyle* v. *Alderman,* 89 N. C. 133, 45 Am. R. 677; Opinion of

Judges of Maine, 3 Greenleaf 403; *United States* v. *Lockwood,* 1 Pinney (Wis.) 359; *State* v. *Valle,* 41 Mo. 31; *State* v. *Hocker,* 39 Fla. 477, 63 Am. St. R. 174. * * *."

In *County Court* v. *Nicely,* 121 W. Va. 767, 6 S. E. 2d 485, a county superintendent of schools was held not to be a public officer. The Court pointed out, however, that the conclusion was reached only because of provisions of the applicable statute. In the opinion the Court stated:

"We cannot escape the conclusion that, whatever may have been the status of the county superintendent of schools under the old system, the present county superintendent is not a county officer within the meaning of the statute under which this proceeding was instituted. We regard him as the executive agent of the board of education, and the fact that the statute requires him to act as the chief executive officer of the board (Code, 18-4-10) does not make him a county officer in fact. The mere use of the word 'officer', or the provisions that the superintendent shall be provided with a suitable office and be entitled to clerical assistants, do not, of themselves, make him the holder of a county office. The real test, we think, is defined in *Hartigan* v. *Board of Regents,* 49 W. Va. 14, 38 S. E. 698, in which Judge Brannon cited with approval many authorities to the effect that the true test of whether or not one occupied a public office is whether he should, under such office, be required to exercise what may be called a part of the sovereignty of the state. We approve and adopt this test, and we say that whatever part of the sovereignty of the state is delegated to any official or officials, in connection with our county educational systems, is vested in the boards of education of the several counties. * * *."

In *Jackson* v. *Board of Education,* 128 W. Va. 154, 35 S. E. 2d 852, under a later statute, a county superintendent of schools, appointed by the board of education, was held to be a public officer within the meaning of Section 38, Article VI, of the Constitution. In pointing out the difference between the results reached in the *Nicely* case and in the *Jackson* case, the Court used this language:

"* * * Public education is a governmental function and all executive participants in its furtherance are in part clothed with the sovereign power of the State and therefore public officers. In the *Rowan* case we had this to say: 'In *County Court* v. *Nicely,* 121 W. Va. 767, 6 S. E. 2d 485, we held that a county superintendent of schools was not a county officer, and removable as such by the circuit court under the provisions of Code, 6-6-7. That was the sole question decided in that case. The suggestion is made that, not being a county officer, the doctrine relating to *de facto* officers does not apply to the relator, Lon E. Browning. To this we reply that, under the statute now in force, Acts 1941, Chapter 33, he is armed with governmental power, namely, to nominate teachers and principals, and to assign, transfer, suspend, promote or dismiss teachers and other school employees. This makes him a public officer to whom we can apply the doctrine relating to *de facto* officials.' * * *." See *Rowan* v. *Board,* 125 W. Va. 406, 24 S. E. 2d 583; *Rogers* v. *Board,* 125 W. Va. 579, 25 S. E. 2d 537; *Barbour* v. *County Court,* 85 W. Va. 359, 101 S. E. 721; *Helmick* v. *County Court,* 65 W. Va. 231, 64 S. E. 17; *Town of Davis* v. *Filler,* 47 W. Va. 413, 35 S. E. 6; *Richards* v. *Clarksburg,* 30 W. Va. 491, 4 S. E. 774.

There can be no doubt that the matter of public health is a governmental function. Neither can there be any doubt that a county health officer, appointed pursuant to the provisions of Article 2 of Chapter 16, is a public officer within the meaning of Section 38 of Article VI of the State Constitution. He is required to receive reports of physicians in his county concerning communicable or infectious diseases, and to act thereon. He is required to act as executive officer of the county board of health. The county board of health is required to "exercise all the powers, and enforce all the rules and regulations of the State Public Health Council, so far as applicable to such county."; and he is subject to orders of the Public Health Council. In general, he is made responsible for the health of the inhabitants of his county. These duties performed by him for the State make him a public officer within the meaning of the constitutional provision.

Can a county court nominate, or the State Board of Health appoint, a county health officer for a term other than four years? The only statutory provision applicable is Section 1 of Article 2, quoted above. As will be noticed by reference to that section, the appointment must be made "upon the recommendation of the county court". There is no provision with reference to the length of the term for which such person is to be recommended or nominated. As to the appointment by the State Board of Health of the person recommended or nominated, however, we find the definite requirements that: "A county health officer shall be appointed as aforesaid to serve for a term of four years". Thus we find the sole power to appoint is vested in the State Board of Health, though the appointment must be made upon the recommendation of the county court, and that the only statutory requirement as to the length of the term of the county health officer is that it be for four years. Clear meaning of the statutory provisions can not be ignored. See *Town of Davis v. Filler*, 47 W. Va. 413, 35 S. E. 6; *Barbour v. County Court*, 85 W. Va. 359, 101 S. E. 721. Such an appointment can be made only for the term required, four years. *A fortiori*, the length of such term can not be changed by the county court by attempting to recommend or nominate for a different term. The attempt to do so in the instant case, assuming as true the contention of defendant as to the nomination being only for the "coming fiscal year", was without effect, and mere surplusage.

We now reach the question whether the county health officer of Hancock County, being a public officer and having been appointed and qualified for a definite term of four years, can be summarily removed from office without notice and without having been afforded an opportunity to defend. The only provisions contained in Chapter 16 relating to the removal of the county health officer are found in Sections 1 and 4 of Article 2. The applicable provisions of Section 1 read: "Should the public health council fail to confirm the nomination of the person recommended as county or municipal health officer, or should the public health council or the county or mu-

nicipal authority remove any such officer, another nomination shall at once be made to the public health council by the nominating authority." The applicable provision of Section 4 reads: "* * * And in such cases the failure or refusal of any local health officer or local health body to carry out the lawful orders and regulations of the state board of health shall be sufficient cause for the removal of such local health officer or local health body from office, and upon such removal the proper county or municipal authorities shall at once nominate a successor, other than the person removed, as provided by law." No procedure is provided in Chapter 16 for the removal of any health officer. Article IV, Section 6 of the State Constitution, reads: "All officers elected or appointed under this Constitution, may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty, or gross immorality, in such manner as may be prescribed by general laws, and unless so removed they shall continue to discharge the duties of their respective offices until their successors are elected, or appointed and qualified." The manner of removal is not prescribed by this constitutional provision, but it is required that removal shall be as "prescribed by general laws". The manner of removal of county officers prescribed by "general laws" is contained in Code, 6-6-7. That section provides that the person holding a county office, the "* * * tenure of which office is fixed by law, whether elected or appointed thereto, except a judge of a court of record, may be removed by the circuit court * * * on any of the grounds, or for any of the causes, for which a state officer may be removed * * * or for any of the causes or on any of the grounds provided by any other statute. * * *.

"The charges shall be reduced to writing and entered of record by the court, or the judge thereof in vacation, and a summons shall thereupon be issued by the clerk of such court containing a copy of the charges and requiring the officer or person named therein to appear before the court or judge, at the courthouse * * *, and answer the charges on a day to be named therein, which sum-

mons shall be served * * *, at least five days before the return day thereof. * * *". Other procedures may exist relating to the removal of certain county officers, but we find no other procedure providing for the removal of a county health officer.

In *Arkle* v. *Board of Commissioners*, 41 W. Va. 471, 23 S. E. 804, we find this statement: "We are aware of no right which is clung to with more tenacity, and about which more feeling is engendered, than in regard to the tenure of public office; and in determining the questions arising upon these contests, intricate questions of law must frequently present themselves for determination. An officer has a right to an office to which he has been fairly and legally elected, and to the emoluments arising therefrom, and he should not be deprived of them without an opportunity of raising all proper legal questions for his protection, and having them judicially determined. * * *."

In *Richards* v. *Clarksburg*, 30 W. Va. 491, 501, 4 S. E. 774, we find this statement: "If the officer be a ministerial one, holding *during pleasure,* he may generally be removed without notice or trial, and he is in fact removed upon the appointment of a successer; but if he holds during *good behavior,* or for a fixed term, he can only be removed after summons, and after having license and opportunity to answer for himself. *Warren's Case,* 3 Cro. Jac. 540; *Middleton's Case,* Id. 358; *Rex* v. *Thame,* 1 Strange 115; *Lord Bruce's Case,* 2 Strange 819; *Rex* v. *Richardson,* 1 Burrows 518; *The King* v. *Mayor, etc.,* 1 Doug. 149; *Burr* v. *McDonald,* 3 Grat. 215."

In *Helmick* v. *County Court*, 65 W. Va. 231, 64 S. E. 17, a county surveyor was appointed by the county court for a definite term prescribed by statute. The county court attempted to summarily remove him from office. In holding that the county court had no authority to remove the officer, the Court used this language:

"But the Constitution does not fix the tenure of his office; the legislature, however, has done this, and has made

his term to extend two years. See section 1392, Code 1906. This section, and the constitutional provision above quoted, constitute a road surveyor a public officer who holds for a fixed term of two years; and provides the only mode of his selection to office, which is by appointment by the county court.

"The county court, having once exercised its discretion in the appointment of said Helmick as road surveyor, can not revoke the appointment pending his term; it has no discretion to remove him from office. He can be removed only for cause by the circuit court, and after judicial inquiry, as provided by section 183, Code, 1906." See *Jackson* v. *Board,* 128 W. Va. 154, 35 S. E. 2d 852; *Rogers* v. *Board,* 125 W. Va. 579, 25 S. E. 2d 537; *County Court* v. *Nicely,* 121 W. Va. 767, 6 S. E. 2d 485; *Sharps* v. *Jones,* 100 W. Va. 662, 131 S. E. 463; *Barbour* v. *County Court,* 85 W. Va. 359, 101 S. E. 721; *Hartigan* v. *Board of Regents,* 49 W. Va. 14, 38 S. E. 698; *Town of Davis* v. *Filler,* 47 W. Va. 413, 35 S. E. 6. In view of the plain language of the statutes and of the clear holding of the cases cited, we necessarily hold that the action of the County Court of Hancock County in attempting to remove petitioner from the office of county health officer for Hancock County was void.

It is contended, however, that the clause contained in Section 1, Article 2, quoted above, reading: "* * * or should the public health council or the county or municipal authority remove any such officer, * * *", necessarily empowers the county court to remove from office the county health officer. We do not reach that question, but hold only that such officer can not be removed by any authority without being afforded an opportunity to defend. We do point out, however, that the power of the Legislature to authorize the removal of such an officer, where a judicial inquiry is necessary, may be doubted. See Section 24, Article VIII, Constitution of West Virginia. *Arkle* v. *Board of Commissioners, supra; State* v. *Thompson,* 100 W. Va. 253, 130 S. E. 456.

The action of the county court in attempting to diminish the salary of petitioner during the term for which he

was appointed is also void. Article VI, Section 38, of the State Constitution provides: "* * * nor shall the salary of any public officer be increased or diminished during his term of office." Code, 6-7-7, contains provisions to the same effect. See *Harbert* v. *County Court,* 129 W. Va. 54, 39 S. E. 2d 177; *Henritze* v. *County Court,* 129 W. Va. 81, 39 S. E. 2d 194; *Springer* v. *Board,* 117 W. Va. 413, 185 S. E. 692.

The petitioner herein also prays that defendant be required to pay unto petitioner, in addition to the annual salary of $3,900.00, the sum of $50.00 per month for travel expenses and for certain other expenses incurred in connection with the performance of his official duties. Doctor Schwartz was paid such travel and other expenses during the fiscal years, 1949-1950, and 1950-1951. We think, however, that the payment of such expenses is a matter within the discretion of the county court. The expenses are not part of the salary of the county health officer, and payment thereof is not controlled by the constitutional or statutory provisions referred to above. The amount of such expenses may of necessity change from time to time. We are not now called upon to consider whether the discretion vested in the county court, relating to the payment of such expenses, may be abused.

· The petitioner further prays that the action of the county court in attempting to appoint Doctor Fisher as county health officer of Hancock County may be declared void. We think what has been said indicates sufficiently that the attempted appointment of Doctor Fisher was unauthorized for two reasons; that no vacancy in the office existed at the time, and that no power is vested in the county court to appoint any person to that office.

It clearly appears that the defendant paid unto the petitioner, as county health officer for Hancock County, a salary of $4,200.00 for the fiscal year beginning July 1, 1950. This was an increase of $300.00 in the annual salary fixed at the time of his appointment, July 1, 1949, and, being within the term for which he was appointed, can not be justified. No contention is made in the instant pro-

ceeding that the amount of such increase so paid unto petitioner should now be refunded to the County Court of Hancock County. We think, however, that the action of the Court in the instant proceeding should be without prejudice to the defendant to deduct that amount, with interest thereon, from any sum owing petitioner by defendant, or to recover the same in a proper action.

Being of the views indicated, a peremptory writ will be awarded directing the County Court of Hancock County to pay unto petitioner, Doctor L. O. Schwartz, his salary of $325.00 per month for the months of July and August, 1951, but without prejudice to the right of the defendant to deduct therefrom the three hundred dollar salary increase paid to him for the fiscal year beginning July 1, 1950, with interest thereon.

*Writ awarded.*