**Lynn A. JENKINS, Wayne A. Jensen, Raymond J. Height, Rodney D. Bullock, F. Merrill Warnick, Plaintiffs,**

v.

**Robert BISHOP et al., David S. Monson, Lt. Governor and Secretary of State, et al., K. B. Olsen, Box Elder County Clerk, et al., Defendants.**

No. 16070.

Supreme Court of Utah.

Dec. 29, 1978.

James B. Lee and James M. Elegante, of Parsons, Behle & Latimer, Salt Lake City, for plaintiffs.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Asst. Atty. Gen., Melvin E. Leslie, Legislative Gen. Counsel, Salt Lake City, for defendants.

PER CURIAM:

The majority of the court agree:

That the defendants (as school administrators and teachers) were not disqualified to become candidates, nor from being elected as members of the Legislature.

That similarly, they are not disqualified from being sworn in as members of the Legislature.

The question is not presented in this proceeding, and the court does not decide, what status the defendants must occupy in relation to their respective school districts during the time they serve in the Legislature (or during the term for which they were elected).

.    .    .    .    .

CROCKETT, Justice (concurring with comments):

In addition to my outright concurrence with the per curiam opinion, I make some

further comments. I realize that due to the action of the Court in disposing of this case as indicated in the per curiam opinion, what is said about the status of defendant Legislators in relation to their school districts is but dicta in this case. Yet because other views are expressed in anticipation of confrontation of that issue, if and when it is presented, it seems to me that some observations indicating that there is another side to the controversy are justified.

Our constitution in Article VI, Section 10, provides that:

> Each house shall be the judge of the election and qualifications of its members
>
> . . .

This adds greater force to the already good and sufficient reasons for exercising judicial restraint and not presuming to intrude into the prerogatives of the legislative branch. Accordingly, unless it appears so clearly that it is beyond a reasonable doubt that there is some violation of a constitutional provision, or irreconcilable conflict therewith, the courts should leave that responsibility where the constitution expressly placed it: with the legislature.[1]

Should it be thought that this controversy is for the Court to decide these further observations are pertinent. I share the idea expressed by Justice Wilkins that it seems unfortunate that this matter was initiated in this Court on a petition for an extraordinary writ, so there is no sufficient factual foundation, nor any assurance that all parties that may be directly affected thereby, or who may desire to have their interests represented, before the Court, so there is no adequate foundation for a well-advised determination of such an important issue.

It seems to me that the arguments of our esteemed Chief Justice in support of his opinion that school teachers should not be legislators are matters which may well be considered by those whose prerogative it is to fashion the law and its policies. But that is not our prerogative. Rather it is to understand and apply the law as intended by those whose prerogative it is to fashion it.

Under the universally recognized rule of construction, constitutional provisions should be interpreted and applied in accordance with what was intended by its framers. In view of the status of the schools at that time, supported almost entirely from private sources, I cannot see the remotest possibility that the interdiction of Article VI, Section 6, preventing legislators from "holding any public office of profit or trust," nor Article V, Section 1, providing for the separation of powers and prohibiting any person from exercising powers in two separate branches of government, could reasonably be regarded as referring to school teachers.

In our democratic system, the legislature is intended to represent the people: that is, to be made up from the general public representing a wide spectrum of the citizenry. It is not to be doubted that legislators from the ranks of education are affected by the interests of that calling. But all other legislators also have interests. No one lives in a vacuum. It is sometimes said that: "In the absence of angels, we must get along with human beings." This includes their interests as well as their varying degrees of wisdom and folly. The same may be said with respect to the varying degrees of integrity which requires them to put the interests of the general welfare above their personal or group interests. I think it will not be gainsaid that people from the educational field have rendered a valuable and important service in the formation of this state and throughout its history. Insofar as I have been able to ascertain, there has never heretofore been a challenge to their right to serve in the legislature.

In regard to the problem of concern herein, I agree that a person should not be actively engaged in the legislative sessions, nor in committee work, at the same time he is supposed to be actively engaged in teach-

---

1. That the legislature should be the sole judge of the qualifications of its members, see 72 Am.Jur.2d, States, Sec. 44; 81A C.J.S. States § 44; 107 A.L.R. 205; *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Ellison v. Barnes*, 23 Utah 183, 63 P. 899 (1901).

ing, and certainly he should not be receiving pay from two public payrolls for the same time.

Upon the basis of the record before us, I am not persuaded that anything has been made to appear which should disqualify the defendants from the privileges and responsibilities of citizenship by serving in the legislature, any more than would be so of any other class of citizens; nor that the public should be deprived of the benefits of some representation from the field of education and the contribution they can make to the general welfare by the defendants so serving.

.    .    .    .    .

WILKINS, Justice (concurring with comments):

I would like to address the Chief Justice's comment that we "would be remiss in our duty" by failing to answer the critical question: "Can a teacher serve as a member of the legislature and retain his status as a teacher in the schools?" by stating that this Court *was not requested* by plaintiffs to answer this question, notwithstanding the enormous interest that it may stimulate. And further, even if we were irresistably compelled to explore the matter, the plaintiffs ought not to prevail in my opinion because of the fatally defective abbreviation of the record before us.

We have here only a record of pleadings, devoid of a hearing where evidence was adduced. It is not enough for us to suppose, to presume, to infer—or to explore questions about these educators (teachers and administrators) concerning whether they can continue to remain educators if they serve in the Utah Legislature or are disabled from doing so because of conflict of interest and separation of powers doctrines in Utah's Constitution[1] without an evidentiary record which would shed light upon these questions.

1. See Art. V, Sec. 1 thereof and also Art. VI, Sec. 6.

1. Provided for by Rule 65B, U.R.C.P.

Having no evidentiary record before us and thereby being disabled from making any meaningful analysis, we should not attempt to illuminate from darkness. And exercising that restraint, in my opinion, is our duty.

HALL, Justice (concurring):

In light of the brevity of the per curiam opinion which I concur in, I am constrained to make the following observations.

Plaintiffs directly petition this Court seeking an Extraordinary Writ[1] mandating the removal of the names of educators or administrators in the Utah Public School System from the list of nominated candidates for election to the Utah Legislature, prohibiting the printing of their names on election ballots and further prohibiting the issuance of certificates of election to them.

The petition fails to assert that "no other plain, speedy and adequate remedy exists," nor at the time of the hearing thereon was any showing made of extraordinary circumstances as would support a finding by this Court necessary to support or warrant the granting of the relief demanded.[2] For these reasons alone the writ could be denied. Nevertheless, the Court duly considered the petition on its merits.

The *sole* issue presented by the petition for our determination is the propriety of educators and school administrators running for, and being elected to, the Legislature of this state.

Petitioners primarily rely upon the "separation of powers" provision of the Utah Constitution which reads in pertinent part as follows:

.    .    .    no person charged with the exercise of powers properly belonging to one of those departments, shall exercise any function appertaining to either of the others,    .    .    .[3]

The foregoing language in no way precludes those persons charged with the exer-

2. See Rule 65B(a), U.R.C.P.

3. Article V, Section 1, Constitution of Utah.

cise of powers within one branch of government from running for or being elected to another branch. There are innumerable incidents wherein such has occurred in this state, and at all levels of government, from the highest state office to the lowliest city and county precinct offices. What is precluded is the exercise of "any function" of a different branch of government than that to which one is elected.

Assuming, but not deciding, that educators and school administrators are in fact members of the executive branch of government, the obvious and usual means of complying with the said constitutional provision would be for the successful candidate to simply resign from one office upon assuming another.

The petition in this matter was prematurely filed and this Court has no alternative but to deny it on the ground that there is no basis upon which relief can be granted.

Admittedly, the denial of this petition does not resolve all *foreseeable future* issues, however, it does resolve the *only* issue *presently* before this Court. Despite the urgence of those who would have the Court reach out and address all possible issues, such is not the duty nor the function of courts. As was stated in *Lyon v. Bateman* : [4]

> They [Courts] are not supposed to be a forum for hearing academic contentions or rendering advisory opinions.

Should this Court address an issue not presently before it, viz., whether or not an educator may serve at the same time as a legislator, it would constitute a departure from its constitutional and statutory powers and its views thereon would be deemed advisory only.

MAUGHAN, J., concurs in the views expressed in the concurring opinion of HALL, J.

ELLETT, Chief Justice (concurring and dissenting):

I am in agreement with the holding that a school teacher can run for the office of State Senator or State Representative and that he may serve in the office to which he is elected. That is as far as I can go in agreeing with the Per Curiam opinion.

That opinion leaves unanswered the principal question which everybody desires to have answered, and that is this: "Can a teacher, serve as a member of the legislature and retain his status as a teacher in the public schools?" By not deciding the question reminds one of a man who asked his doctor if he could take a cyanide pill. "Certainly, you can," replied the doctor. The man took the pill and died instantly. The doctor vindicated his advice by saying: "I told him the truth. He never asked me what would happen to him if he took it!" The question of whether a teacher can be a legislator has the necessary corollary involved, towit: can he be a legislator and still be a teacher?

I believe that there are a number of reasons which would prevent the dual role of teacher and legislator. I will point out a few of them.

Article V, Section 1 of the Utah Constitution provides that no person charged with the exercise of powers properly belonging to one branch of government shall exercise any function appertaining to either of the other two branches of government. As a member of the legislature, the teacher exercises functions properly appertaining to the legislative branch of government; as a teacher he exercises functions appertaining to the executive branch of government in that he is charged with the duty to teach and train the youth of this state to become good citizens and to prepare them to make a living and become useful citizens of the state. These functions are exactly parallel with those duties of the warden of the state prison and his deputies; that is, they seek to teach prisoners under their control how

---

4.   119 Utah 434, 228 P.2d 818 (1951), cited with approval in *Baird v. State*, Utah, 574 P.2d 713 (1978).

to be better citizens, how to make a living by lawful means, and how to enjoy their rights in a free society. Thus, teachers who become legislators exercise functions in different branches of government in violation of Article V, Section 1 of our Constitution.

A chain of power is established by statute from the State Board of Examiners through the Superintendent of Public Instruction and the State Board of Education to the County Boards of Education. U.C.A., 1953, 53–2–12, specifically provides:

The general control and supervision of the public school system is vested in the state board of education. It shall adopt rules and regulations to eliminate and prevent all unnecessary duplication of work or instruction in any branch or division of the public school system and shall require the governing boards of all branches and divisions of the public school system to put the same into operation.

Local school boards are required to attend conventions called by the State Superintendent as directed in U.C.A., 1953, 53–3–10. They are also required to report census information to the State Superintendent by virtue of U.C.A., 1953, 53–6–13.

That the State Board of Education is located squarely within the executive branch of government is evidenced further by U.C.A., 1953, 53–3–9, which requires the Superintendent to file monthly itemized accounts of expenses with the State Board of Examiners. The State Board of Examiners consists of the Governor, the Secretary of State, and the Attorney General, as set forth in U.C.A., 1953, 63–6–1.

Utah law makes special provisions for teachers. For example, Chapter 50 of Title 53, in the Utah Code sets up a commission to deal with ethical and professional conduct among teachers. Chapter 51 of the same title creates a termination procedure giving a teacher the right to a hearing prior to termination. Finally, there is the School Employees' Retirement Act contained in Chapter 29 of Title 53.

Administrators within the public school system clearly are public officers. The Su-preme Court of West Virginia in *Jackson v. Board of Education of Kanawha County*, 128 W.Va. 154, 35 S.E.2d 852 (1945), held that the superintendent of schools of Kanawha County was a public officer and as such was not entitled to an increase in salary by virtue of a constitutional provision prohibiting an increase in salary for any public officer during his term of office. The court noted:

. . . Public education is a governmental function and all executive participants in its furtherance are in part clothed with the sovereign power of the State and therefore public officers. . . 35 S.E.2d at 853.

Teachers are not mere employees of the state. Teachers have a special status within the framework of state government and their duties are properly part of the executive branch of government.

Two state courts have dealt with the questions of teachers in the legislature. The Supreme Court of Alaska in *Begich v. Jefferson*, 441 P.2d 27 (Alaska 1968), considered the question under an Alaska constitutional provision which provided in part:

No legislator may hold any other *office or position of profit* under the United States or the State. [Emphasis added.]

Admittedly the Alaskan provision is broader than the corresponding Utah constitutional provision, Article VI, Section 6, in that the Alaska provision adds the words "position of profit." The court considered the position of superintendent of on-base schools and found that it constituted a "position of profit" within the meaning of the constitutional prohibition. The summary judgment decree of the trial court read:

[T]he positions of teacher, principal, or superintendent in a State operated school constitute positions of profit under Article II, Section 5 of the Constitution of the State of Alaska, which provides that no legislator may hold any other office or position of profit under the United States or the State. 441 P.2d at 29.

The Supreme Court upheld the summary judgment in all respects. More particular-

ly, the Alaska Supreme Court found that the teaching position was not merely an employment but could be considered an appointment:

. . . In short, we hold that teachers are 'appointed,' as that term is commonly and ordinarily understood, to positions within our educational system. 441 P.2d at 32.

The Utah Constitution does not include the word "position of profit." Its provision uses the word "office of profit or trust." There is no concensus, however, as to the meaning of the word "office." In *McCornick v. Thatcher*, 8 Utah 294, 30 P. 1091 (1892), the Territorial Supreme Court was asked to decide whether a trustee of the Agricultural College of Utah held an office. The decision is replete with definitions of officer given by the authorities and by courts of sister states. The ultimate conclusion of the court was that:

. . . The definitions of the term 'office,' as given by the text writers and courts, are not in entire harmony, . . . 8 Utah at 301, 30 P. at 1093.

The Oregon Supreme Court has also dealt with the question of teachers in the legislature. In *Monaghan v. School Dist. No. 1, Clackamas County*, 211 Or. 360, 315 P.2d 797 (1957), the Oregon court held that a member of the legislature could not simultaneously act under a contract with the local school board as a teacher. The Oregon constitutional provision in question reads:

The powers of the Government shall be divided into three seperate [sic] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the function of another, except as in this Constitution expressly provided. 315 P.2d at 800.

The Oregon constitutional provision closely parallels the Utah separation of powers clause found in Article V, Section 1.

The Oregon court quoted from the Federalist Papers, No. 51, concerning the importance of the separation of powers doctrine:

In order to lay a due foundation for that separate and distinct exercise of the different powers of government, which to a certain extent is admitted on all hands to be essential to the preservation of liberty, it is evident that each department should have a will of its own, and consequently should be so constituted that the members of each should have *as little agency as possible* in the appointment of the members of the others. * * * It is equally evident that the members of each department should be *as little dependent as possible* on those of the others, for the emoluments annexed to their offices. . . . 315 P.2d at 800. [Emphasis added by court.]

The Oregon Court also pointed out that the mere fact that a teacher is an employee does not mean that he does not exercise functions of the executive branch of government. The court pointed out that Oregon has a constitutional mandate for the establishment of state schools. As pointed out above, Utah has the same constitutional mandate. The Oregon court then noted that school districts were legislatively created entities. As pointed out above, U.C.A., 1953, 53-4-8 makes school boards bodies corporate, giving them all the powers of a quasi-municipal corporation. The court then made the logical conclusion:

. . . Teachers are employees hired by a state agency whose function it is to serve the sate in the exercise of its sovereign power and duty as mandated by Article VIII, Section 3 of the Oregon Constitution [mandate for public education]. 315 P.2d at 804.

The Oregon court further reasoned that as a legislator Monaghan was charged with duties belonging to one branch of government but performed "functions" belonging to another branch:

. . . There can be no doubt that Mr. Monaghan, as a legislator, is 'charged with official duties.' But the exercise of the 'functions' of the department of government gives to the word 'functions' a broader sweep and more comprehensive meaning than 'official duties.' It con-

templates a wider range of the exercise of functions including and beyond those which may be comprehended in the 'official duties' of any one officer. 315 P.2d at 802.

The Oregon court was quick to point out that it had no intention of imputing a malevolent motive to representative Monaghan. Its decision was grounded on the separation of powers doctrine accompanied by a practical recognition of the evils which could arise of that doctrine were not followed. In that vein, the Supreme Court incorporated the trial court's statement into its opinion:

> * * * Conceivably the school board could say to its employee who is serving in the legislature, 'You must vote in favor of certain bills that are advantageous to us and which increase our authority. If you do we will increase your salary and if you do not you will be penalized in your position in certain respects.' Would this relationship not then tend to concentrate power in the branch of the government by which the member of the legislature was employed and to the detriment of the legislative branch? * * * 315 P.2d at 805.

The Supreme Court of Utah has also expressed an interest in maintaining a separation of powers in state government and in assuring that legislators should enjoy "that independent frame of mind which should be possessed by the ideal legislator." *State ex rel. Jugler v. Grover*, 102 Utah 41, 51, 125 P.2d 807, 812 (1942), quoting from *Chenoweth v. Chambers*, 33 Cal.App. 104, 164 P. 428, 429 (1917).

The potential for abuse exists in the State of Utah by allowing teachers to sit as legislators. The possibility for abuse is particularly evident when it is recognized that one respondent, Kenneth Alford, is principal of the school in which another respondent, John E. Ulibarri, is vice-principal. It is difficult to see how respondent, an administrator, could exercise complete independence of judgment when he might be faced with repercussions should he disagree with his superior as to bills affecting the educational system.

Furthermore, a conflict of interest exists where educators and administrators in the public school system are called upon to consider legislation dealing with appropriations or other matters within the educational system. Petitioners recognize that all legislators have prejudices and at the same time natural inclinations to promote their own profession in some manner. That a legislator would represent certain interests does not thwart the democratic process, but is, rather, inherent in that process. However, the constitution of the State of Utah sets limits on the types of prejudices which may enter officially into the legislative process. One such limitation is that no branch of government may taint the legislature with influence exerted by having members of that branch seated in the legislature.

Another reason which should prevent teachers from serving in the legislature is one of public policy. A teacher is chosen for his special aptitude in teaching and once he begins with a class, the results will be best obtained if he is permitted to continue with those pupils to the end of the term. It is equally as bad to trade teachers in the middle of a term as it is to switch pupils in the middle of the term. A teacher should have the welfare of his students uppermost in his mind. If he has that then it would seem that he would not wish to desert his classes and become a legislator.

The teachers cannot draw state salaries from two branches of government; and it would not matter that they are supposed to be taking their vacations while sitting in the legislative sessions. The school district would be compelled to hire substitutes for their classes; but if they were truly vacation periods, there would be no need for help on those occasions.

In addition to service in the sessions of the legislature, the legislators have assigned themselves to various committees and constantly meet throughout the year in connection with their committee assignments. I think by allowing the teachers' names to remain upon the ballots we should make it clear that if and when an elected teacher

takes his oath of office as a legislator, he forfeits his right to serve as a teacher in the public schools so long as he remains a member of the legislative branch of government.