STATE *ex rel.* MARION G. ROGERS *v.* BOARD OF EDUCATION OF LEWIS COUNTY *et al.*

(CC 666)

Submitted April 14, 1943. Decided May 4, 1943.

*Stathers, Stathers & Cantrall,* for relator.

*Linn Mapel Brannon* and *Haymond Maxwell* for respondents.

ROSE, JUDGE:

The Circuit Court of Lewis County, on its own motion, has certified here the questions of law arising upon the demurrer of Marion G. Rogers, who claims to be the legal county superintendent of schools of that county, the relator in a mandamus proceeding, to the answer of the Board of Education of Lewis County, its individual members and Hobert Beeghley, who purports to be acting as county superintendent of schools of said county, to a rule awarded by that court.

The petition shows that Rogers was regularly appointed superintendent of schools for Lewis County by the Board of Education on the 6th day of July, 1942, for a term of four years ending the 30th day of June, 1946, and that he

has ever since been, and was at the time of filing the petition, such superintendent; that the Board, composed of D. D. Chapman, Ralph M. Fisher, Dewey Hawkins, Arthur R. Ward and George Harrison, said Chapman being president thereof, at a meeting held on the 23rd day of February, 1943, by the vote of Fisher, Hawkins and Ward, Harrison and Chapman voting in the negative, accepted charges preferred against the relator by Fisher for the purpose of removing him from his said office, under Section 3, Article 4, Chapter 34 of the Acts of the Legislature 1937; and that a notice of said charges containing a copy thereof, signed by said Fisher, Hawkins and Ward as members of said board, was duly served on the relator, by which he was also notified that a meeting of the board would be held March 5, 1943, "to afford you (relator) an opportunity to be heard upon said charges and to show any reasons, if any you can, why you should not be removed as County Superintendent of Schools." These charges were as follows:

"(1) Assigned and transferred Arline Peterson, a teacher of this County, from a school taught by her at Ireland to the Kitsonville school without first obtaining the approval of the Board, and in direct violation of the Board's refusal to approve the transfer of said teacher, heretofore requested by said Superintendent.

(2) Certifying to the Board the payment to Robert Fields, a teacher, for the full month of December, 1942, when the said Superintendent knew that the said Fields had been absent, without leave of the Board, for a period of 6 days.

(3) Changed and moved the school bus place of storage to a new location without informing the Board of said change and also without obtaining the Board's consent to said change.

(4) Permitted Paul Matthews, a student, to absent himself from school for 4 days to accompany Robert Fields, a teacher and band instructor, on a trip to New York, and on the return to

school of said student, directed and instructed Fred P. Weihl, Principal of Weston High School, to excuse the absences from class of said student.

(5)   Placing and assigning Mrs. Murray McWhorter, a substitute teacher, to the Kitsonville school without the approval of the Board and in direct violation of the Board's instructions.

(6)   Paying one Jennie Stalnaker, a substitute teacher, for 2 days of teaching, by United States Post Office Money Order, dated the 11th day of February, 1943, in the amount of $10.00, with funds withdrawn from a petty cash account (which petty cash account is maintained by said Superintendent without the approval of the Board) instead of certifying to the Board for payment the salary due said teacher.

(7)   Causing to be installed in the Administration Building a furnace, having constructed a partition and making a classroom in said building, without knowledge of the Board and without the Board's authorization and direction so to do.

(8)   Advising the faculty of Weston High School that the Board was composed of lay individuals who did not know anything about education and advising the faculty to dismiss from their monds and forget the advice, instructions and counsel given by certain Board Members to the faculty at an open forum meeting of the Board, held on the 7th day of January, 1943.

(9)   Deliberately making a false statement to A. R. Ward, a Board Member, in that, he informed said member that Eloise Peninegar, a teacher, would have to teach in any school that he, the said Superintendent, directed, and deliberately denied in a Board meeting, held on the 12th day of Feb., 1943, that he made such a statement.

(10)   Misrepresented to the Board as to the qualifications of certain teachers."

The relator further alleges that on the 5th day of March, 1943, at the hour and place appointed, relator appeared in person with his counsel, for the purpose of making defense against said charges, but that the board refused to allow him to be assisted by counsel, and required his counsel to retire from the room, and further refused to reduce to writing the evidence which might be taken, unless the petitioner himself would furnish a stenographer for that purpose at his own expense; that thereupon the petitioner refused to make any further appearance, but, with his counsel, retired from the room; that thereupon certain persons appearing as witnesses were permitted to make statements to the board without being sworn, whose pretended evidence was preserved pursuant to Acts of Legislature 1937, Chapter 34, Article 4, Section 10 (8), by an assistant superintendent of said county, designated by the board as its secretary for the meeting, which evidence as so preserved was as follows:

"Mr. John A. Henderson, Chairman of the local Rationing Board, was called in. He stated that Mr. Field, the Band Master, first asked for extra gas to go to New York. Then he asked for enough to go on to Albany to see his Draft Board. He was finally allowed gas for this trip, but was refused a later request for gas for a trip to Washington, D. C. He said Mr. Field did report to the Ration Board and surrendered the unused gas stamps left from the New York trip.

"The following teachers were then called from the Weston High School building and separately interviewed concerning the statements made by Supt. Rogers at a special faculty meeting:

"Rev. Frank Reed, who said, upon hearing the charge read, 'Something like that was used.' 'That was the essence of it.' 'Lay member was used', and 'Pay no attention'.

"Mrs. Thelma Kessler said, 'He said board members could not look at things like a teacher or a schoolman'.

"Miss Griffin said she 'heard a statement similar to the one charged'. Also, 'Should not have

been held before the pupils and the public'. She read some notes taken in the faculty meeting above mentioned.

"Miss Wells had heard 'Something like' the charged statement.

"Mr. Woofter said, 'It was a similar statement. I can't remember just what'."

The petition further sets forth that no other evidence was taken; that upon the statements of these so-called witnesses, the said board found the charges against the petitioner to be sustained and purported to remove him from his office, Chapman, president thereof, however, voting in the negative; that thereafter the respondent,, Beeghley, was by the board elected county superintendent of schools for said county in petitioner's place and stead, who thereupon immediately entered upon the performance of the duties of such superintendent to the exclusion of the petitioner.

The petitioner maintains that the charges were insufficient; that the hearing was void because of the board's refusal to allow any assistance of counsel; that the evidence is a nullity for the reason that the witnesses were not sworn, and that, even if considered, it does not show the petitioner to have been guilty of any act or omission for which he could be removed from office.

Upon issuance of the rule, the respondents filed a demurrer to the petition, which was overruled; whereupon they filed their joint and separate answer thereto. This answer, so far as we can see, raises no issue of fact except that it is alleged therein that the board heard, in addition to the witnesses mentioned in the petition, the unsworn testimony of Harrison, Fisher, Hawkins and Ward, members of the board, without indicating the character or contents of their evidence. The respondents, however, rely principally upon the legal contentions that the relator was not entitled to have the assistance of counsel at the hearing; that since he made no denial of the charges or evidence in support thereof, the evidence, preserved

and not preserved, was adequate to sustain the charges against the relator; and that, therefore, the proceedings taken were sufficiently regular to effect legally the removal of the relator from office.

To this answer a demurrer was filed by the petitioner on the grounds that it does not traverse the material allegations of the petition, nor set up sufficient facts in avoidance thereof; that it does not show legal compliance with the statutes governing the procedure for the removal of, a county superintendent from office; that, by admitting that the relator was denied his right to counsel, and that the witnesses against him were not sworn nor the evidence fully reduced to writing, the respondents show the hearing to have been void; and that it shows that the charges were not grounds for the removal of the relator from office. This demurrer was overruled and the questions arising thereon certified as stated.

On argument here, a motion was made to dismiss the whole proceeding on the broad ground that mandamus cannot be resorted to for the purposes sought here. The full question of law involved in this motion arose upon the demurrer below to the petition herein. We approve the lower court's action. Mandamus is a proper remedy for one who has been illegally ousted from public office. "*Mandamus* lies to correct an improper amotion from office and to restore the full enjoyment of his franchise a person who has been improperly deprived thereof; and when one has been wrongfully deprived of his office by the illegal appointment of another, the writ lies to compel his restoration, though the person appointed in his stead be in possession *de facto.*" *Schmulbach* v. *Speidel,* 50 W. Va. 553, 40 S. E. 424, 55 L. R. A. 922. We have frequently repeated this rule. *Kline* v. *McKelvey,* 57 W. Va. 29, 49 S. E. 896; *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A, 1244; *Griffith* v. *County Court,* 80 W. Va. 410, 92 S. E. 676. And a county superintendent of schools is a public officer. In *County Court* v. *Nicely,* 121 W. Va. 767, 6 S. E. (2d) 485, we held that he was not a "county

officer", and removable under the provision of Code, 6-6-7, relating to the removal of county officers, but we did not say or intimate that he is not a public officer. He is an officer of the school district, which is co-extensive with the county. It is true that he is the clerical and executive officer of the board of education, Acts of Legislature 1937, Chapter 34, Article 4, Section 10, subsections 1 and 7, but he is far more. He has a multitude of powers and duties independent of the board. Acts of Legislature 1937, Chapter 34, Article 4, Section 10, and Acts of Legislature 1933, Ex. Sess. Chapter 8, Article 4, Section 11.

We are first concerned with the sufficiency of the charges. Prior to the enactment of Chapter 34 of the Acts of 1937, Code 1931, as amended by Acts of 1933, Ex. Sess. Ch. 8, Art. 4, Sec. 3, provided that "The board may remove the superintendent for cause in its judgment and discretion". This provision was by the 1937 Act, however, amended to read as follows: "The board may remove the superintendent from office for immorality, incompetency, insubordination, intemperance or wilful neglect of duty; but the charges shall be stated in writing and the superintendent shall be given an opportunity to be heard by the board upon not less than ten days' notice: Provided, however, That a superintendent so suspended, shall not forfeit his salary for the period of suspension". Acts of Legislature, 1937, Ch. 34, Art. 4, Sec. 3.

It is perfectly clear that before this amendment the powers of the board in the removal of a superintendent were less restricted than under the present Act. The grounds upon which the superintendent may be removed are not as broad as those relating to state, county, district and municipal officers. Code, 6-6-5, 7. But none of the present charges even purports to constitute immorality, incompetency or intemperance. One or two may hint at wilful neglect of duty, while two, probably, may be construed as coming under the head of insubordination. Charges Nos. 3, 6, 7, 8, 9 and 10 are plainly insufficient on their face. Charge No. 1, we think, is a sufficient

charge of insubordination. No. 5 may also be such, depending upon the rules and regulations adopted by the board relating to the substitute teachers (we find no statutory regulations on this subject). Charge No. 2 may, when further amplified, show a neglect of duty, while No. 4 apparently was a mere exercise of the superintendent's discretion. Therefore, there remained very little in the charges requiring investigation.

The evidence preserved, very clearly, does not sustain any charge which we find to be sufficient. This testimony relates to no charge except No. 8, and at most, indicates only a clash between the superintendent and some unnamed members of the board on some unstated pedagogical questions. So far as we can see, the superintendent was in the right, although probably indiscreet. The law does not contemplate that the members of a board of education shall supervise the professional work of teachers, principals and superintendents. They are not teachers, and ordinarily, not qualified to be such. Generally they do not possess qualifications to pass upon methods of instruction and discipline. The law clearly contemplates that professionally trained teachers, principals and superintendents shall have exclusive control of these matters. Further, a member of the board individually has no authority of any kind in connection with the schools of his county, except that the president, as such, is required to sign orders, contracts and so forth. The board of education can only act as a board, and when the board is not in session the members, severally or jointly, have no more authority to interfere with schools or school matters than any other citizen of the county.

The answer, indeed, does say that four members of the board also gave testimony. This undoubtedly created a highly delicate situation. One, and probably three, members of the board had preferred the charges. These three apparently prosecuted the charges. They, with one other, also gave testimony. A tribunal so constituted and acting carries a very serious burden of exercising impartiality

and avoiding the appearance of bias, prejudice, or arbitrariness, in its actions. The same persons were prosecutors, witnesses and judges. We do not say that their proceedings were void for this reason alone, *Rutter* v. *Burke*, 89 Vt. 14, 93 A. 842, but we do emphasize the necessity of avoiding the appearance of unfairness in such a trial. An administrative body, clothed by law with quasi-judicial powers, must never depart from those elemental principles of discreetness and circumspection which our system of law requires in all tribunals which purport to conduct trials.

The superintendent, who was to enter upon a hearing by which his right to an important and profitable office for a definite term of years, should be determined, was denied the assistance of legal counsel. We unhesitatingly say that this was the deprivation of a hearing as contemplated by statute. "A 'hearing' includes the introduction of evidence, the argument of counsel, and the pronouncement of the decree". Opinion, Hatcher, J., *Ellis* v. *Road Commission*, 100 W. Va. 531, 131 S. E. 7. See also: *People ex rel. Mayor of N. Y.* v. *Nichols*, 79 N. Y. 582; *Board of Education* v. *Martin, Judge*, 112 W. Va. 174, 163 S. E. 850; *People* v. *Thompson*, 94 N. Y. 451; *Andrews* v. *King, Mayor*, 77 Me. 224. The intricacies of the substantive and procedural law involved were such that no layman could be expected to protect adequately his rights without legal assistance. There was a time in the history of English jurisprudence when a felon was not entitled to have the assistance of an attorney at law, but in America, the very word "hearing", both in common and legal parlance, implies some kind of trial, formal or informal, and presupposes permission to have legal aid if desired. The necessity for counsel in such cases is illustrated in the present proceeding. The controversy to be investigated had resolved itself into a direct clash between certain members of the board and the superintendent, in which those very members of the board were also to sit in

judgment. The board should have been glad to have the constructive criticism of the legal profession whether for or against any legal proposition that should arise. The actions of this particular board, as disclosed by this record, fall far short of showing that they did not need the assistance of someone expert in the law.

Respondents concede that no witness heard was sworn. This alone nullifies the hearing. A "hearing" by either a judicial or a quasi-judicial tribunal contemplates the taking of evidence, and oral testimony presupposes the administration of an oath. *Patterson* v. *State,* 122 Ohio St. 96, 171 N. E. 26; *Meyers* v. *State,* 112 Neb. 149, 198 N. W. 871; *Schultz* v. *Bower,* 57 Minn. 493, 59 N. W. 631, 47 Am. St. Rep. 630; *Baker* v. *Woodward,* 12 Or. 3, 6 P. 173; *Nash* v. *Hoxie,* 59 Wis. 384, 18 N. W. 408; *Poe* v. *State,* 95 Ark. 172, 129 S. W. 292; *Southern Pine Lumber Co.* v. *Ward,* 16 Okla. 131, 85 P. 459; *Edelstein* v. *United States,* 149 Fed. 636, 9 L. R. A. (N. S.) 236. Nor could there be an adjudication against the superintendent by default. *Field* v. *Commonwealth,* 32 Pa. St. Rep. 478; *State* v. *Frazier,* 47 N. D. 314, 182 N. W. 545.

We have felt some uncertainty as to whether the superintendent did not waive some of his rights by refusing to appear or defend in the limited and restricted manner offered to him by the board. But, upon full consideration of this question we are of opinion that the superintendent was not required to go through the wholly irregular and inadequate hearing offered, in order to preserve his right to the full hearing which he was guaranteed under the law.

We conclude, therefore, that the demurrer to the petition was correctly overruled and that the answer of the respondents, while an adequate compliance with the rule issued against them, does not, by denials or affirmative allegations, or otherwise, contain any matter of law, or any showing of fact, which, if sustained by evidence, would defeat the relator's claim to the writ he seeks. The questions of law certified need not to be further answered in detail.

*Reversed.*