386 S.E.2d 835

**STATE of West Virginia ex rel. Howard TUCK**

v.

**Thomas W. COLE, Chancellor of the West Virginia Board of Regents; the West Virginia Board of Regents; James W. Rowley, President of West Virginia College of Graduate Studies; and William Crockett.**

No. 18200.

Supreme Court of Appeals of West Virginia.

Oct. 19, 1989.

Bruce Walker, Atty. Gen's. Office, Charleston, for Thomas W. Cole, etc.

Marvin W. Masters, Masters & Taylor, Charleston, for State of W.Va. ex rel. Howard Tuck.

NEELY, Justice:

Howard K. Tuck, Ph.D., the petitioner below, was relieved of his staff position at the West Virginia College of Graduate Studies in 1982. On 23 December 1982, he sought a writ of mandamus against the officers of the College and the state Board of Regents, claiming that he was denied due process of law when the respondents failed to renew his contract and denied him a hearing on the matter. The Circuit Court of Kanawha County found in Dr. Tuck's favor and, on 3 September 1987, ordered the respondents to pay Dr. Tuck back wages of $116,494.56 and either grant him a hearing or reinstate him. The respondents appeal the order here. We now reverse the Circuit Court's order and enter judgment for the respondents.

Dr. Tuck holds a Ph.D. in history from the University of Delaware. It is undisputed that he is qualified to teach history at the college level. He taught history at various colleges in other states from 1968 to 1974. On 1 July 1974, he took a position at the West Virginia College of Graduate Studies, in Institute, as Assistant Vice President for Academic Affairs. There was a dispute early on about whether Dr. Tuck was a tenure-track professor, subject to the College's peer review process. In

1975, it was settled that Dr. Tuck was an administrator, even though he might teach an occasional course "on a 'need' basis." He was given a "courtesy" title of "Assistant Professor" (later "Associate Professor").

In November 1975, the College's committee of Deans considered Dr. Tuck for tenure and rejected him. Dr. Tuck objected to this peer review, stating in a letter of 9 December 1975:

> The overwhelming majority of my responsibilities are ... clearly administrative. I, thus, fall under provision 9–E of "Board of Regents Amended Policy Bulletin No. 36" and (as long as my duties remain primarily administrative—as they have this far) do not accrue the service credit that would allow me to ever apply for tenure.

In a 12 December 1975 letter, John Wright, then interim president of the College, agreed with Dr. Tuck, "Your primary responsibilities are administrative rather than faculty and therefore you are not operating under the conditions of Policy Bulletin # 36 [*infra*] that refers to faculty appointments. You are not in a probationary status leading to consideration for tenure." There is no evidence in the record that Dr. Tuck's teaching responsibilities even increased from 1975 to 1982.

In 1979, Bd. Regents Policy Bulletin No. 36 was amended to allow professional staff other than professors to qualify for tenure.[1] In Dr. Tuck's case, however, there is no evidence in the record that the president of the college ever designated Dr. Tuck as "faculty" in a tenure-track or tenured position in accordance with the 1979 amendment.

From 1976 to 1979, Dr. Tuck held the position of "Assistant to the President," and from 1979 to 1982, "Executive Assistant to the President." Each year, Dr. Tuck negotiated a contract running from 1 July of one year to 30 June of the next. In the spring of 1982, James Rowley, then president of the College, decided that he no longer wished to employ Dr. Tuck as his assistant. Dr. Tuck sought to negotiate for a teaching position as a tenured associate professor of history. College officials initially contemplated offering Dr. Tuck a full faculty position, but later decided against it. Dr. Tuck's name was at one point submitted to the Board of Regents for tenure in 1982, but later withdrawn without action, for reasons that are beyond the record in this case. William Crockett, acting president, finally offered Dr. Tuck a written contract to continue as an assistant to the president until 30 August 1982. Dr. Tuck returned this contract unsigned with the note, "I am a tenured associate professor with regular faculty rank. Please remit proper contract immediately. HKT." The college never delivered a contract to Dr. Tuck to serve as a full-time, tenured professor. On 29 September 1982, Dr. Crockett wrote to Dr. Tuck that, because they could not agree on a contract, Dr. Tuck's employment at the College was ended as of 30 June 1982, the last day of Dr. Tuck's prior contract. The College did not give Dr. Tuck a hearing or state a reason for not rehiring Dr. Tuck.

Dr. Tuck claims that he was deprived of a property right (employment) without due process of law (a prior hearing), as required by the Fourteenth Amendment to the U.S. *Constitution* and by Article III, Section 10, of the West Virginia *Constitution*. The law in this area was set out by the U.S. Supreme Court in a pair of 1972 cases, both involving professors at public colleges. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The issue in both cases was whether the employee had a property right in continued public employment. If there is a property right, the employee must be accorded due process before he can be fired. *Sindermann, supra.* If there is no property right, the employer may refuse to renew

---

1. W.Va. Bd. Regents, Policy Bulletin No. 36 (March 5, 1981), provides in pertinent part:

    2. *Appointment of Faculty:*

      a. ... The faculty are those people so designated by the institution's president and may include ... such professional personnel as librarians ...

the employment, without a hearing and without giving any reason. *Roth, supra.* The principles of *Sindermann* and *Roth* have been incorporated in our jurisprudence through such cases as *North v. Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977), *McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978), and *Clarke v. Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981).

In *Roth, supra,* Mr. Justice Stewart set out the Court's definition of a protected property interest:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. The entitlement may be grounded in contract, state statutes or regulations, and the like:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* In *Roth,* the employee was a probationary, tenure-track professor in the University of Wisconsin system. Tenure was granted automatically, according to state statute, after four years of service. Before four years, however, state law gave professors no presumptive right to have their contracts renewed. Thus, the Court held, Roth had no property interest to protect, but a mere subjective expectation.

In the companion case *Sindermann, supra,* the respondent was a tenth-year professor in the Texas state college system. Odessa College, where he taught, had no formal tenure system. Rather, the college's Faculty Guide stated, "[T]he College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory [etc.]." *Sindermann, supra,* 408 U.S. at 600, 92 S.Ct. at 2699. This policy, the Court held, was sufficient to support an objective, reasonable expectation that a teacher would not be let go without cause, that is, a property interest in continued employment.

Employment in the state colleges of West Virginia, under the statutes of this state and the regulations of the Board of Regents, is more similar to the Wisconsin system at issue in *Roth* than the Texas policy in *Sindermann.* That is, West Virginia has set out a very specific system of procedural protections that apply to different carefully defined categories of college employees. *W.Va.Code,* 18–26–1 *et seq.* [1969, *rep.* 1989],[2] and W.Va. Bd. Regents, Policy Bulletin No. 36 (March 5, 1981).[3]

---

**2.** *W.Va.Code,* 18–26–8c [1979, *rep.* 1989], provides, in pertinent part:

The president of each state college, university or community college shall give written notice to probationary faculty members concerning their retention or nonretention for the ensuing academic year, not later than the first day of March for those probationary faculty members who are in their first academic year of service; not later than the fifteenth day of December for those probationary faculty members who are in their second academic year of service; and at least one year before the expiration of an appointment for those probationary faculty members who have been employed two or more years with the institution ... The faculty member shall be accorded substantive and procedural due process ... If the committee of the board or the hearing examiner shall conclude that the reasons for nonretention are arbitrary or capricious or without a factual basis, the faculty member shall be retained for the ensuing academic year ... The term "probationary faculty members," shall be defined according to regulations promulgated by the board of regents.

**3.** W.Va. Bd. Regents, Policy Bulletin No. 36 (March 5, 1981), provides, in pertinent part:

3. *Faculty: Types and Conditions of Appointment:*

a. Full-time appointments to the faculty of an institution, other than those classified as temporary, shall be either probationary or tenured.

b. All temporary appointments ... shall be neither probationary nor tenured, but shall be appointments only for the periods and for the purposes specified, with no other interest or right obtained by the person appointed by virtue of such appointment.

8. *Probationary Status:*

The statutes and regulations are silent about procedural and substantive rights of college administrators, unless they have been designated as "faculty" for tenure purposes. *Supra,* note 1. Indeed, the Policy Bulletin No. 36 in effect in 1975 had specifically excluded administrators from consideration for tenure.

Dr. Tuck claims that the fact that his name was submitted for tenure in 1982, then withdrawn, implies that he must have been a probationary faculty member (on the tenure track) before 1982. This is not supported by the record. The amended 1979 policy, *supra,* note 1, did allow the College President to make such appointments for administrators. However, such appointments required affirmative designation by the President. Such was not done in Dr. Tuck's case. Moreover, the Board of Regents' policy contemplated that tenure may be given to a new appointee; that is, submission for tenure does not imply that an appointee has already held a probationary tenure-track appointment.[4]

Under the system then in force, Dr. Tuck and the College had agreed that Dr. Tuck's status was that of an administrator and, as to his teaching an occasional course as needed, a temporary part-time faculty member. Tenured and probationary ("tenure-track") faculty members have certain procedural protections, that is, some property right in continuing employment beyond their current contracts. Administrators, (unless designated as "faculty" for tenure purposes, *supra,* note 1), and temporary (non-tenure-track) faculty members, have only the rights attendant to their current contracts.

The Circuit Court in this case was unable to decide in which category of staff Dr. Tuck belonged. The trial court's confusion was not warranted by the factual record. It is clear that Dr. Tuck was an administrator, and neither a tenure-track nor a tenured professor. Nothing the respondents did created any objective expectancy that Dr. Tuck's employment was necessarily to be continued beyond any current contract. Thus, Dr. Tuck's property right in employment ended when his contract with the College ended, on 30 June 1982. Beyond that date, the parties negotiated for a new contract but did not agree to one. Thus, Dr. Tuck's status, as to the possibility of an appointment as a full-time professor in 1982–83, was that of someone *seeking* a tenure-track position, not a probationary professor already in a tenure-track position.

The trial court was therefore wrong in its legal conclusion that Dr. Tuck had a property right in continued employment by the respondents. Because he had no property right, he had no right to a hearing before the respondents let him go. Judgment should have been entered below in favor of the respondents.

For the reasons above, the judgment of the Circuit Court of Kanawha County is reversed, and final judgment entered for the respondents.

Reversed and Final Judgment.

a. When a full-time faculty member is appointed on other than a temporary or tenured basis in any of the institutions of higher education under the jurisdiction of the Board of Regents, the appointment shall be probationary.

.    .    .    .    .

d. During the probationary period, contracts shall be issued on a year-to-year basis and appointments may be terminated at the end of any contract year. During said probationary period, notices of nonreappointment may be issued for any reason that is not

arbitrary, capricious or without factual basis. Any documented information relating to the decision for nonretention or dismissal shall be provided promptly to the faculty member upon request.

4. W.Va. Bd. Regents, Policy Bulletin No. 36 (March 5, 1981), provides, in pertinent part:

7. *Tenure:*

.    .    .    .    .

d. Tenure may be granted at the time of appointment by the president ...