# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.L.

No. 19-0747 (Putnam County 17-JA-27)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners D.L. and S.L., A.L.'s paternal aunts, by counsel David L. Hill and Jeff C. Woods, respectively, jointly appeal the Circuit Court of Putnam County's July 16, 2019, order denying them placement of A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel John M. Masslon II, filed a response in support of the circuit court's order. The guardian ad litem, Maggie J. Kuhl, filed a response on behalf of the child in support of the circuit court's order. Finally, respondents R.H. and M.H., the child's foster parents, by counsel Jacquelyn S. Biddle, filed a response in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying them custody of A.L. based on inaccurate home study reports and that the court's errors denied them due process. They further argue that the circuit court denied them a meaningful opportunity to bond with the child.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioners identified twelve distinct assignments of error, but addressed all twelve alleged errors in a single argument section. Although petitioners' assignments of error have been reformulated for clarity in this decision, their entire argument has been addressed.

1

In March of 2017, the DHHR filed a child abuse and neglect petition alleging that A.L. was abused and neglected by his parents.[3] The child was removed from his parents' custody and placed with respondent foster parents where he remained throughout the proceedings. Following several hearings, the circuit court terminated A.L.'s mother's parental rights in September of 2017, and granted his father an improvement period. However, A.L.'s father passed away in May of 2018. Following the death of A.L.'s father, petitioners moved separately for custody of the child. Because petitioners resided in Michigan, the circuit court ordered that investigations of their homes be completed pursuant to the Interstate Compact on the Placement of Children ("ICPC"). Petitioners also requested visitation with the child. However, the circuit court found that petitioners had had no contact with the child for over a year and, because they were traveling back to Michigan the next day, the DHHR did not have sufficient time to organize a visitation. Instead, the circuit court ordered that regularly scheduled video visitation occur between petitioners and the child. The circuit court also appointed counsel for both petitioners.

In December of 2018, the circuit court received the home studies from the Michigan Department of Health and Human Services ("MDHHS"), which recommended against placing the child with either petitioner. Petitioners challenged the findings of the home studies and requested the opportunity to present evidence, which the circuit court granted. D.L. contested the MDHHS findings that she did not have the financial ability to care for A.L. She testified that she earned approximately $1,800 a month, which left $900 dollars per month after payment of her monthly expenses. However, the MDHHS found that D.L. earned only $900 dollars per month, as evidenced by paystubs that D.L. provided to that agency. Although D.L. testified the paystubs were irregularly small due to an advance she requested from her employer, she presented no other paystubs to verify her testimony of additional income. Further, D.L. testified that she would require public assistance or donations to care for A.L., including assistance to provide food and a car seat. S.L. testified that she, too, believed that the home study was inaccurate in regard to her income and findings that her family could not meet their financial obligations. However, S.L. admitted to a prior domestic violence incident between her and her current partner, which caused the circuit court concern.

The circuit court also heard testimony from A.L.'s treatment professionals who opined that the child, who had originally exhibited signs of developmental delays, had made significant improvement over the pendency of the proceedings while in the care of his foster parents. "Testimony provided indicated that [A.L.] has thrived in his current placement improving his non-verbal skills, social interaction, language and speech skills, and other educational improvements." Further, the court found that A.L.

> formed a close bond with [respondent foster parents], which he has not exhibited with his paternal aunts. [A.L.] identifies [his foster parents] as his family, and he exhibits the love and trust associated with the family with [his foster parents]. Conversely, [A.L.] has limited interaction with his paternal aunts and exhibits little to no bond with them.

---

[3]The specific allegations of abuse and neglect are not apparent from the record on appeal.

Ultimately, the circuit court found that it was in A.L.'s best interest to remain with the respondent foster parents. In reaching this conclusion, the circuit court reasoned that petitioners' argument "essentially boils down to the idea that their blood relation to [A.L.] should trump all other considerations; the relevant statutes and case law do not support this position." Accordingly, the circuit court denied petitioners' requests for custody and granted custody to respondent foster parents. The circuit court's July 16, 2019, order memorialized this decision, and petitioners now appeal this order.[4]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioners argue that the circuit court erred in denying them custody of the child despite their blood relation. According to petitioners, the circuit court relied on the MDHHS home studies, which were clearly inaccurate. Before adopting the home studies of the MDHHS, petitioners argue that the circuit court should have "exercised its independent due diligence and determined whether the recommendations contained therein where made on the best available evidence." Petitioners argue that the circuit court's failure to do so is a denial of their right to due process. We find that petitioners are entitled to no relief in this regard.

The circuit court did not violate petitioners' right to due process; in fact, petitioners were provided more procedural safeguards than required by our prior holdings. This Court has found that the

---

[4]A.L.'s mother's parental rights were terminated during the proceedings below; his father is deceased. According to the parties, the permanency plan for the child is adoption by the respondent foster parents.

"[a]pplicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation." Syl. Pt. 2, *North v. Bd. Of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977).

Syl. Pt. 5, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). "The fundamental requirement of procedural due process in a civil proceeding is 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id*. at 402, 758 S.E.2d at 755 (quoting *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

In the context of abuse and neglect proceedings, West Virginia Code § 49-4-601(h) establishes a "two-tiered framework" of parties that enjoy the procedural due process right of a meaningful opportunity to be heard. *See State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018). Specifically, parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-4-601(h). Further, we have explained that "[a] person 'who obtains physical custody *after* the initiation of abuse and neglect proceedings—such as a foster parent—does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians.'" *Beane*, 240 W. Va. at 648, 814 S.E.2d at 665 (quoting *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946 at *3 (W. Va. May 5, 2017)(memorandum decision)) (emphasis added). These individuals—foster parents, pre-adoptive parents, and relative caregivers—are entitled to a meaningful opportunity to be heard only and are not entitled to an opportunity to testify and to present and cross-examine witnesses. W. Va. Code § 49-4-601(h).

Notably, petitioners are not classified as any of the above-listed individuals entitled to the greater participation rights afforded those with custodial or other parental rights or responsibilities. Petitioners are blood relatives, but they did not care for the child prior to his removal. Yet, the circuit court provided petitioners with the highest standard of procedural due process for abuse and neglect proceedings—a meaningful opportunity to be heard *and* the opportunity to testify and to present and cross-examine witnesses. On appeal, petitioners attempt to derive a greater due process right through this Court's prior holdings,[5] but cite to no authority

---

[5]In doing so, petitioners argue that "[a] [g]randparent or *an adult relative* with a positive home study certifying the home for adoption *must be given preference* over the non-relative home even if the non-relative home has the appearance of a better placement choice." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011) (emphasis added). Petitioners argue that, because a positive home study was critical to their preference in placement of A.L., the circuit court denied them due process by considering the allegedly inaccurate home study.

(continued . . . )

4

that requires the circuit court to provide any more meaningful opportunity to be heard than an opportunity equal to what would be provided to the child's parents.

In considering whether the circuit court erred in denying petitioners custody of the child, we first note that

> [o]nly two statutory familial preferences applicable to the adoption of a child are recognized in this State: (1) a preference for adoptive placement with the child's grandparents set forth in W. Va. Code § 49-4-114(a)(3) (2015) and (2) a preference for placing siblings into the same adoptive home pursuant to W. Va. Code § 49-4-111 (2015). Apart from the grandparent and the sibling preferences, *there does not exist an adoptive placement preference for a child's blood relatives, generally.*

Syl. Pt. 2, *In re K.L.*, 241 W. Va. 546, 826 S.E.2d 671 (2019) (emphasis added). Accordingly, petitioners are incorrect to rely on their blood relation to A.L. granting them any preferential treatment under West Virginia law. Further, "the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." *Id.* at 548, 826 S.E.2d at 673, syl. pt. 3, in part. Therefore, the circuit court was tasked with deciding which placement would be in A.L.'s best interest without any preference to any party.

Contrary to petitioners' argument, the circuit court did not simply adopt the recommendation of the MDHHS home studies, as evidenced in the circuit court's final order: "the decision to place [A.L.] in the custody of one of his aunts is more extensive than whether the relevant home study is acceptable." Rather, the home studies were properly considered in determining what placement would be in A.L.'s best interest and petitioners were permitted the opportunity to contradict those studies. The circuit court found that "[a]lthough the testimony of [D.L.] and [S.L.] explained a number of the issues presented in the home studies, there are still significant concerns regarding the paternal aunts' ability to provide a stable home for [A.L.]" Among these concerns were D.L.'s financial ability to care for A.L., as she admitted that public assistance or donations would be necessary for his care. In regard to S.L., the circuit court noted its concern over her admitted domestic violence incident with her current partner and her failure to participate in the video visitation with A.L. In comparison, the respondent foster parents exhibited a loving and bonded environment that was attentive to A.L.'s special needs. The evidence revealed that A.L. "formed a bond with [his foster parents] that resembles a familial bond," while exhibiting "little to no bond with [his aunts]." In considering these competing opportunities for adoptive placements, we find that circuit court did not err or abuse its discretion

---

However, the above-quoted section is *not* this Court's holding in *Mazzone*, but, rather, a section of the DHHR's adoption policy that we considered on appeal. *Id.* at 196, 706 S.E.2d at 393 (holding that petitioner foster parents were improperly denied notice and an opportunity to be heard regarding placement of their foster child). As more fully explained herein, adult relatives are not granted a preference for adoptive placement pursuant to the West Virginia Code.

in placing A.L. with a family with which he was bonded and thrived in their home because such a placement was in the child's best interest.[6]

Petitioners, in pursuit of their argument on appeal, make multiple assertions that the circuit court should have required the investigating MDHHS officials to appear and testify regarding the accuracy of their reports. Petitioners incorrectly assert that in "*In re Aaron H.*, [229 W. Va. 677, 735 S.E.2d 274 (2012)], . . . the Court noted that individuals conducting a home study under the [ICPC] could be required to appear before the Court." Frankly, *Aaron H.* does not address requiring the individuals who completed an ICPC home study to testify. Instead, "the sole issue before [the] Court in [*Aaron H.*] [was] whether . . . the circuit court erred in placing the child with his foster parents for adoption rather than with his grandfather." *Id*. at 681, 735 S.E.2d at 278. Moreover, petitioners do not cite to a request for those individuals to testify and provide no authority that required the circuit court to request that evidence *sua sponte*. Likewise, petitioners assert that additional home studies were necessary prior to the circuit court's ultimate determinations, but they provide no citation to any such request made to the circuit court. Both of these arguments appear to be issues raised for the first time on appeal. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, these alleged errors will not be considered.

Finally, we address petitioners' argument that the circuit court denied them a meaningful opportunity to bond with the child. Rule 15 of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings addresses reasonable visitation when a child is removed from their home:

> If at any time the court orders a child removed from the custody of his or her parent(s) and placed in the custody of the Department or of some other responsible person, the court may make such provision for reasonable visitation, telephone or video calls, letters, email, or other communication as is consistent with the child's well-being and best interests. The court shall assure that any supervised visitation shall occur in surroundings and in a safe place, dignified, and suitable for visitation, taking into account the child's age and condition. The person requesting visitation shall set forth his or her relationship to the child and the degree of personal contact previously existing with the child. In determining the appropriateness of granting visitation rights to the person seeking visitation, the court shall consider whether or not the granting of visitation would interfere

---

[6]Petitioners argue that the DHHR "failed to establish or prove how placing [A.L.] with [them] would be contrary to his best interest," but this argument is unsupported by West Virginia case law. As more fully explained herein, circuit courts are not bound to place a child with *any blood relative* and there is no requirement that placement with a blood relative be contrary to the child's best interests to deny placement to that relative. *See* Syl. Pt. 2, *In re K.L.*, 241 W. Va. 546, 826 S.E.2d 671 (2019). Rather, the necessary determination is what placement would best serve the child's welfare. *See id.* at 547, 826 S.E.2d at 671, syl. pt. 3, in part.

with the child's case plan and the overall effect granting or denying visitation will have on the child's best interests.

Petitioners first requested contact with A.L. during a hearing in the summer of 2018. Notably, petitioners had travelled from Michigan this day and expected to travel back the following day. However, the circuit court found that petitioners had had no contact with the child for over one year and the DHHR did not have sufficient time to schedule a supervised visitation. In light of petitioners' limited contact with A.L. and the scheduling issue, the circuit court denied in-person contact with petitioners and ordered video call contact instead. Petitioners cite this Court's holding that "[a] child has a right to continued association with individuals with whom he has formed a close emotional bond . . . provided that a determination is made that such continued contact is in the best interests of the child." Syl. Pt. 11, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996). Yet, in support, petitioners assert that "[c]learly, D.L. and S.L. have a biological connection with A.L" and, in essence, ignore the dearth of evidence that A.L. did not exhibit a "close emotional bond" with them. As stated above, the evidence revealed that petitioners last visited with A.L. during November and December of 2016, when the child was only four years of age. Further, during video visitations with D.L., A.L. was often uninterested in communicating with petitioners and "exhibit[ed] little to no bond with them." The circuit court's decision allowed for visitation while also assuring that the child remained in a safe environment, and, upon our review, that decision was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 16, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison